

Diane Marshal Ennist, Reston, Va., and Kensington, James & Ressler, P.C., New York City, for Federal Home Loan Mortg. Corp.

Weil, Gotshal & Manges, New York City, for Pioneer Commercial Funding Corp.

## In re PIONEER COMMERCIAL FUNDING CORPORATION, a/k/a PCFC of California, Debtor.

### Bankruptcy No. 90 B 20085.

United States Bankruptcy Court, S.D. New York.

May 17, 1990.

## DECISION ON MOTION FOR RELIEF FROM AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Federal Home Loan Mortgage Corporation ("FHLMC") has moved for relief from the automatic stay imposed by 11 U.S.C. § 362 to permit FHLMC to continue litigation against Pioneer Commercial Funding Corporation ("Pioneer"), the debtor, in a multi-defendant action pending in the United States District Court for the Southern District of California. The California case is entitled *Federal Home Loan Mortgage Corporation v. Guardian Funding Corporation, et al,* Case No. Cv.

88–04210, which was filed on July 12, 1988 (the "Guardian Litigation"). FHLMC has asserted various causes of action in that case against the debtor and fourteen other defendants arising out of an alleged fraudulent scheme pursuant to which approximately $8 million in bogus mortgages were sold to FHLMC by the Guardian Funding Corporation ("Guardian").

The debtor resists FHLMC's motion for relief from the stay on the ground that it has limited resources and personnel; that it has not engaged in any wrongful conduct and that it has been victimized by the fraudulent scheme charged in the California action, as alleged in its cross-claims in that action. The debtor asserts that it is an insolvent company in the early stages of its Chapter 11 case and that it requires the "breathing spell" afforded by the automatic stay in order to attempt a reorganization under the aegis of Chapter 11 of the United States Bankruptcy Code.

### FINDINGS OF FACT

1. On January 20, 1990, an involuntary bankruptcy petition was filed against the debtor in this court pursuant to Chapter 7 of the United States Bankruptcy Code by three separate creditor banks. By order dated April 20, 1990, the debtor converted the Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(a). An order for relief was entered in the converted case on April 20, 1990. The debtor continues to operate its business and manage its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor's principal business has been the financing of companies within the airline, mortgage and heavy equipment industries on both a secured and unsecured basis. The debtor has provided working capital loans to regional and commuter airlines, secured by accounts receivable. The debtor also processed over $1.3 billion in mortgage warehouse lending to various mortgage companies throughout this country.

3. FHLMC is a corporate instrumentality of the United States established by the Emergency Home Finance Act of 1970, 12 U.S.C. § 1451 *et seq.* Its mission is to increase the availability of capital for home mortgages. FHLMC accomplishes this objective by purchasing residential mortgages from mortgage originators and pooling them for resale to investors in the form of securities. The funds received from the sale of the securities are used for further purchases of mortgages. Therefore, FHLMC functions as a financial intermediary between mortgage originators and the general capital markets. Its mortgage operations increase the availability of residential mortgage credit and serve to provide credit for home buyers at lower interest rates.

4. On July 12, 1988, FHLMC filed a complaint in the United States District Court for the Central District of California against fifteen defendants, including the debtor, alleging a scheme by which approximately $8 million in fraudulent loans were sold to FHLMC through Guardian, which acted as a selling servicer. The complaint alleges that a unity of interest and ownership existed between Guardian and the debtor and that Guardian is the alter ego of the debtor, being the instrumentality and conduit through which the debtor carried on its business in the name of Guardian through the exercise of complete control and domination of Guardian. It is further alleged that the debtor's domination of Guardian was carried out by and through the debtor's principals, Ted Reingold and Louis W. Coyne. It is alleged that Guardian was used to avoid liability and to substitute a financially insolvent corporation in the place of the debtor.

5. FHLMC's prayer for relief in the California District Court action against the fifteen defendants seeks actual damages for fraud and deceit, the rescission of the fraudulent transactions in the amount of approximately $8 million, a constructive trust over those monies, punitive damages of $15 million and treble damages and attorneys' fees pursuant to provisions of the RICO statute, interests and costs.

6. FHLMC maintains that judicial economy mandates that the United States Dis-

trict Court in California, which has had jurisdiction over FHLMC's pending litigation against the fifteen defendants for nearly two years, should be allowed to proceed with the action against all of the defendants, including the debtor, in order to avoid the necessity of duplicating discovery and trial proceedings later in a complex fraud and RICO case.

7. FHLMC points to the fact that a trial date and other deadlines have been set. August 6, 1990 has been set as the last day for dispositive motions. The United States District Court in California has established July 16, 1990 as the cut-off date for discovery. A pre-trial conference is scheduled for August 27, 1990, and trial is scheduled for September 11, 1990. Thus, FHLMC concludes that the convenience of the California forum and advanced status of the case mean that the litigation will be resolved more quickly than if it were divided into two cases, because otherwise, FHLMC would be required to litigate substantially the same issues in California and again in New York. Additionally, FHLMC maintains that it would be difficult to litigate in piecemeal fashion the fraud and RICO claims against the defendants because all of the defendants are charged with collusion as part of a fraudulent scheme and because the defendants have cross-claims against one another.

8. The debtor reasons that the automatic stay should not be lifted only one month after the commencement of the Chapter 11 case. The debtor's president testified that the debtor has only three officers and three full-time employees, as contrasted with twenty-two employees who were available in 1988. The debtor concedes that it is insolvent, but that it is pursuing two major lawsuits and is developing a software program for mortgage warehouse lending for financial service companies from which it hopes to produce sufficient funds to propose a reorganization plan. Therefore, the debtor believes that if it is forced to defend the FHLMC litigation in the United States District Court in California it will expend valuable time and energy which will impede and jeopardize its efforts to formulate and gain approval of a reorganization plan, as well as decrease the funds available for the general creditors.

## DISCUSSION

■ Relief from the automatic stay imposed under 11 U.S.C. § 362 is one of the most vital weapons available to a secured claimholder where primary concern is the liquidation of collateral in reduction of the allowed claim, especially when market rate interest on the secured loan is not authorized. *See United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In the instant case, however, FHLMC is not a secured creditor. FHLMC asserts an unliquidated, unsecured, damage claim against the debtor, as the alter ego of Guardian, a corporation which allegedly sold bogus mortgage loans to FHLMC. It is not alleged in FHLMC's complaint, filed in the United States District Court in California, that FHLMC dealt directly with the debtor as a seller or servicer of mortgage loans. FHLMC alleges that it entered into contracts for the purchase of mortgage loans with Guardian, which existed as a shell, without adequate capital or assets, and was created and controlled by the debtor as a device to avoid liability and to substitute a financially insolvent corporation in the place of the debtor. FHLMC does not assert that the debtor is a necessary party defendant in the California litigation or that the automatic stay in the debtor's Chapter 11 case in this court will prevent FHLMC from proceeding with its California litigation against the other fourteen defendants, including Guardian, the corporation which sold the bogus mortgage loans to FHLMC. As an unliquidated, unsecured creditor, FHLMC must establish extraordinary circumstances before the stay would be lifted in order to compel the debtor to continue to participate as a defendant in FHLMC's multi-defendant action in California. *See In re Sonnax Industries, Inc.*, 99 B.R. 591, 595 (D.Vt.1989).

In order for an unsecured creditor to obtain relief from the automatic stay imposed under 11 U.S.C. § 362, the creditor must establish cause for such relief in ac-

**48**

cordance with 11 U.S.C. § 362(d)(1), because the concepts of adequate protection of an interest in property and the existence of an equity interest in property do not apply to unsecured claims. Although 11 U.S.C. § 362(g)(2) places the burden of proof on the debtor to establish all issues other than lack of equity in property, the issue of cause for relief from the stay is peculiarly within the responsibility of the creditor to present a *prima facie* case of cause for relief, although the debtor has the ultimate burden of persuasion to rebut this issue. *In re Sonnax Industries, Inc.,* 99 B.R. at 595. Manifestly, the debtor does not start out by proving the absences of cause if a creditor with an unsecured claim fails to show some evidence of good cause for relief.

■ The fact that FHLMC asserted a RICO claim against the debtor, which is a non-Code federal statute, as well as fraud and deceit, does not mean that cause for relief from the stay has been shown. The cases which FHLMC cited with regard to this point arose under 28 U.S.C. § 157(d) regarding *withdrawal of the reference,* which must be sought in the district court in accordance with the express language in 28 U.S.C. § 157(d).

■ The automatic stay has been described as one of the fundamental debtor protections provided under the Bankruptcy Code for the purpose of promoting equal creditor treatment and giving the debtor a breathing spell. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 50 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Manifestly, during the first four months in a Chapter 11 case in which the debtor is given the exclusive right to put together a plan pursuant to 11 U.S.C. § 1121(b), an unsecured, unliquidated claimholder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown. The debtor in this case should have at least until August 20, 1990 before it loses the benefit of the automatic stay and is forced to litigate in two courts, especially if the only cause shown by the unsecured claim-

holder for lifting the stay, one month after the commencement of the Chapter 11 case, is judicial economy and administrative efficiency. In the interim, FHLMC may continue to pursue the litigation against the other defendants.

Accordingly, unless this case is dismissed or converted before August 20, 1990, the debtor should, at the minimum, have the benefit of the 120 day exclusivity period under 11 U.S.C. § 1121(b) to formulate a plan of reorganization and to stabilize its operations before the debtor should be compelled to address this unsecured creditor's claims. *See Theatre Holding Corp. v. Mauro (In re Theatre Holding Corp.),* 681 F.2d 102, 106 (2d Cir.1982).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. The unliquidated, unsecured claimholder, FHLMC, has failed to present a *prima facie* showing of cause for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

3. FHLMC's motion for relief from the automatic stay is denied, without prejudice to renewal after August 20, 1990, unless this case is converted for relief under Chapter 7 of the Bankruptcy Code before such date.

SETTLE ORDER on notice.