In re KEENE CORPORATION, Debtor.

Bankruptcy No. 93 B 46090 (SMB).

United States Bankruptcy Court,
S.D. New York.

Aug. 3, 1994.

As Corrected Aug. 11, 1994.

See also, 168 B.R. 285.

Berlack Israels & Liberman (Edward S. Weisfelner, Carole L. Fern, of counsel), New York City, for debtor.

## MEMORANDUM DECISION GRANTING MOTION FOR RELIEF FROM STAY

STUART M. BERNSTEIN, Bankruptcy Judge.

In *Keene Corp. v. Acstar Insurance Co. (In re Keene Corp.)*, 162 B.R. 935 (Bankr. S.D.N.Y.1994), the Court denied the Debtor's application for a preliminary injunction. As a consequence, it permitted judgment creditors, holding final judgments secured either by supersedeas bonds or escrow accounts, to proceed to enforce their judgments against those assets.

█ This contested matter represents a variation on that theme. Dorothy Richter obtained a pre-petition judgment against Keene; Keene stayed its collection by posting a supersedeas bond, and filed an appeal that was still pending on the petition date. Richter now seeks relief from the automatic stay to authorize the continuation of the Debtor's appeal[1] as well as a companion appeal by a third party from a contribution judgment. Because cause exists entitling her to relief from the automatic stay, Richter's motion is granted to the extent set out below.

### FACTS

Richter is one of approximately sixty persons who held non-final judgments as of Keene's petition date. Prior to the petition date, she had commenced a product liability action against Keene and other asbestos manufacturers on behalf of herself and her husband's estate. Her lawsuit alleged that her husband had developed a pulmonary cancer known as mesothelioma through his occupational exposure to asbestos. The case was tried before a jury in New Jersey state court between March 12 and March 30, 1992.

Gavin & Gavin (James C. Gavin, of counsel), Cherry Hill, NJ, for Dorothy Richter.

1. The automatic stay prevents the continuation of the appeal even though Keene is the appellant. Keene was a defendant in the trial court, and hence, the action is deemed to have been commenced "against the debtor" for purposes of the automatic stay. *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1035 (3d Cir.1991); *Sheldon v. Munford, Inc.*, 902 F.2d 7, 8–9 (7th Cir.1990); *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir.1986); *In re Keene*, 162 B.R. at 942.

The jury rendered a verdict in favor of Richter in the sum of $300,000.00 on the wrongful death claim and $150,000.00 on the per quod claim. On April 6, 1992, the New Jersey state court entered a judgment in the sum of $664,244.09, which included prejudgment interest, in favor of Richter and against Keene and the other defendants, Owens Corning Fiberglass Corporation, Pittsburgh Corning Corporation, and GAF Corporation. On the same day, and in accordance with the jury's verdict, the Court entered a molded judgment that allocated a 15% share of responsibility to Keene and 85% of the responsibility to the balance of the other defendants.

Prior to the trial, Richter had dismissed her claims against one of the defendants, Garlock, Inc. Keene and the other defendants, however, had asserted a crossclaim and thereafter obtained a jury verdict against Garlock. As part of the molded judgment, the Court entered a judgment in favor of the defendants and against Garlock in the sum of $78,146.32.

On July 17, 1992, the New Jersey trial court approved a supersedeas bond issued on Keene's behalf by St. Paul Fire & Marine Insurance Company in the sum of $146,333.69, thereby staying enforcement of the Richter judgment against Keene. The supersedeas bond was backed by a standby letter of credit issued by Keene's bank, and Keene collateralized its contingent reimbursement obligation to the bank by granting the bank a lien in specific property of the estate. *See In re Keene Corp.*, 162 B.R. at 939. The amount of the bond represented Keene's share of the judgment, including prejudgment interest, plus one year of post judgment interest, but Richter cannot collect the proceeds unless and until she obtains a final judgment against Keene.

All of the defendants appealed to the New Jersey appellate division, and Garlock also filed a separate appeal from the contribution judgment. During the pendency of the direct appeal, all of the defendants except Keene settled with the plaintiff, and as a result, Keene remains the sole appellant on the direct appeal. All of the defendants, including Keene, remain parties on Garlock's appeal from the contribution judgment.

The parties completed the briefing of the appeals in January 1993, and at that point, awaited scheduling for oral argument. The papers do not explain why the appellate court did not conduct the argument by the time Judge Weinstein entered his preliminary injunction in the Limited Fund Action on July 1, 1993, *see In re Keene Corp.*, 162 B.R. at 940, but in any event, the oral argument, which was still not scheduled as of the petition date, has never occurred.

Richter now seeks relief from the automatic stay to permit the direct and Garlock appeals to proceed in the New Jersey appellate division.

## DISCUSSION

### A. Introduction

Richter's motion implicates Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, because it seeks to continue a prepetition litigation. *See In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Bankruptcy Code § 362(d)(1) states in pertinent part:

> On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause. . . .

The burden of proof on a motion to lift or modify the automatic stay under 11 U.S.C. § 362(d)(1) is a shifting one. *Sonnax Industries*, 907 F.2d at 1285. The movant must initially produce evidence establishing "cause" for relief. *Id.; In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr.S.D.N.Y.1993); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr.S.D.N.Y.1990). Once the movant establishes cause, the burden of proof shifts to the debtor on all other issues. *See* 11 U.S.C. § 362(g)(2); *Sonnax Industries*, 907 F.2d at 1285. "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id.*

Neither Section 362(d)(1) nor the legislative history defines "cause". *Sonnax Industries,* 907 F.2d at 1285. In *Sonnax,* however, the Court adopted twelve factors,[2] enunciated in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr.D.Utah 1984), which are weighed to determine whether to allow a creditor to continue litigation in another forum. Only those factors relevant to a particular case need be considered, *Sonnax Industries,* 907 F.2d at 1285, and the Court need not assign them equal weight. *In re Anton,* 145 B.R. 767, 770 (Bankr.E.D.N.Y.1992). When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate. *In re M.J. & K. Co.,* 161 B.R. at 590 (citing *In re Mego International, Inc.,* 28 B.R. 324, 326 (Bankr.S.D.N.Y.1983)).

Prior to *Sonnax,* the same issues that Richter raises were presented in *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420 (Bankr.S.D.N.Y.1983), *aff'd in part,* 40 B.R. 219 (S.D.N.Y.1984) and *rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y.1984). Two non-final judgment creditors sought relief from the automatic stay to authorize the continuation of the debtor's appeals from adverse judgments in their favor. The judgments were secured by supersedeas bonds posted by the debtor in each case. Although the debtor was the actual party to the appeal, each movant sought to complete the appellate process, obtain a final judgment, and thereafter, collect the proceeds of the bonds.

Initially, the court seemed to hold that the mere status as holder of a non-final bonded judgment establishes cause as a matter of law:

Where a plaintiff seeks modification of the automatic stay imposed by 11 U.S.C. § 362 solely to establish the liability of the debtor to permit the plaintiff to proceed against the surety, insurer, or other third party, cause exists for granting this relief. 26 B.R. at 432 (citations omitted); *accord Sheldon v. Munford, Inc.,* 902 F.2d 7, 9 (7th Cir.1990) (presuming, in dicta, that the bankruptcy court would lift the stay to permit the bonded appeal to go forward); *In re Celotex Corp.,* 128 B.R. 478, 481 n. 9 (Bankr.M.D.Fla.1991) ("This Court has consistently granted relief from the stay to allow any pending asbestos-related bodily injury appeal to be completed.").

The court then considered the balance of harms and absence of prejudice to the debtor, and determined that cause existed. Relying on the legislative history, the court stated that it is often appropriate to permit proceedings to continue in the original court where no great prejudice resulted to the bankruptcy estate. 26 B.R. at 432 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1979); H.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787.). It ruled that no great harm would befall the estate if the stay were lifted; the only prejudice that the estate would suffer was the increased costs, and this did not rise to the level of "great prejudice". *In re Johns–Manville Corp.,* 26 B.R. at 433 (quoting *In re McGraw,* 18 B.R. 140, 142 (Bankr.W.D.Wis.1982)). On the other hand, the claimants would suffer prejudice if the stay remained in place because the continuation of the stay would prevent the claimants from obtaining a final judgment and recovering against the surety. *See In re Johns–Manville,* 26 B.R. at 433.

The court also rejected the debtor's arguments that relief from stay should not be

---

**2.** These include the following: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. 907 F.2d at 1286.

granted because portions of the judgment included punitive damages that might be subject to equitable subordination, or because it could lead to an adverse precedent. 26 B.R. at 433. The court stated that any inequity arising from the enforcement of a punitive damage award resulted from the debtor's decision to post the bond to protect the judgment creditor from the debtor's insolvency. *Id.* Further, any adverse precedent regarding liability was created at the time that the trial court rendered its adverse judgment. *Id.* Moreover, the debtor could avoid the collateral estoppel effect of the adverse judgments only by prosecuting the appeals. *Id.*

## B. Richter's *Prima Facie* Case

■ This Court is not prepared to hold that a judgment creditor will always make out a *prima facie* case of "cause" merely by alleging that the debtor posted a supersedeas bond to stay the enforcement of his or her non-final judgment, although this will frequently be the case. Nevertheless, factors may exist that militate against that conclusion. Here, however, the Court is satisfied that under the facts of this case, Richter has met her initial burden of going forward. She has demonstrated that she will be harmed if the stay remains in place, and that the continued prosecution of the state court proceedings is the *only* means of resolving the issues between the parties.

Richter cannot collect on the bond unless and until she successfully completes the appellate process; moreover, it is likely that the bond represents the only source of full payment of the balance of her claim. In *In re Gerstenzang,* 52 F.2d 863 (S.D.N.Y.1931) (Patterson, D.J.), the district court granted a non-debtor partner relief from a court-ordered stay to continue his state court action against his former partner who was, by then, bankrupt. Prior to the bankruptcy, the bankrupt partner had posted an injunction bond furnished by a surety, and thereafter, the plaintiff obtained a judgment against the bankrupt in the amount of $89,672.83. *Id.* at 864. Granting relief, the district court observed:

> Another reason for modifying the stay in this case is that the plaintiff may have rights against the surety company on the undertaking which was filed. If it appeared that the bankrupt had deposited collateral with the surety company within four months from filing the petition, the situation might be different; but no such showing was made. *Where a creditor's rights against a surety are contingent upon recovery of judgment against the bankrupt, permission to prosecute suit in the state courts to this extent is frequently given.*

*Id.* at 864 (emphasis added) (citations omitted); *accord Jessie v. Honosky (In re Honosky ),* 6 B.R. 667, 669 (S.D.Va.1980).

■ Where the continuation of the stay deprives the judgment creditor of the opportunity to collect the judgment from a third party—and no other sources of collection exist—a court will generally lift the stay to permit the litigation to continue. *See e.g., In re McGraw,* 18 B.R. at 142 (in negligence action, plaintiff granted relief from stay where debtor's presence as defendant was necessary to establish the vicarious liability of his employer and the protection of the employer's surety); *In re Honosky,* 6 B.R. at 669 (stay modified to permit the tort plaintiff to proceed with suit against debtor whose costs were borne by his insurer, and absent stay relief to recover from insurance proceeds, the plaintiff "would be effectively precluded from any recovery for her alleged injuries."). Richter's right to collect the proceeds of the supersedeas bond depends upon her ability to obtain a final judgment against Keene. Further, it is not likely that she could recover the balance of her claim from the estate. Thus, the bond is her only means to receive full payment. This fact, coupled with her advanced age (she is 78), establishes "harm" under *Sonnax.*

In addition, the prosecution of the appeals will expedite the resolution of Richter's claim, and presents the only means by which Keene can recover its collateral for the benefit of all creditors. The state court judgment is a fact of life that Keene cannot ignore. Although the lower court's judgment is on appeal, it is nevertheless final for collateral estoppel purposes. *Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183,

189, 61 S.Ct. 513, 515–16, 85 L.Ed. 725 (1941); *Petrella v. Siegel,* 843 F.2d 87, 90 (2d Cir.1988); *Cerbone v. County of Westchester,* 508 F.Supp. 780, 785 (S.D.N.Y.1981) (Weinfeld, D.J.); *In re Johns–Manville Corp.,* 26 B.R. at 433; *see Kelleran v. Andrijevic,* 825 F.2d 692, 695 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). It is fixed and liquidated for bankruptcy purposes, *Craig Corp. v. Albano (In re Albano),* 55 B.R. 363, 368–69 (N.D.Ill. 1985), and cannot, therefore, be liquidated or estimated[3] in a different amount. The state court judgment fixes Richter's claim, and the only method for Keene to challenge the amount of the claim is through the state court appellate process. *In re Johns–Manville Corp.,* 26 B.R. at 433; *see Sheldon v. Munford, Inc.,* 902 F.2d at 9.

■ Further, Keene retains a reversionary interest in the Richter appeal bond which is subject to divestiture in the event that Richter successfully completes the appellate process. *See In re Keene,* 162 B.R. at 942. Conversely, if Keene prevails, Richter will be divested of any interest in the appeal bond, and subject to the terms of the security agreement between Keene and the bank that issued the standby letter of credit that backed the Richter bond, all rights in Keene's collateral will revert to Keene's estate. Although a court will not grant relief from the stay, absent "extraordinary circumstances," simply to liquidate an unsecured claim, *In re Pioneer Commercial Funding Corp.,* 114 B.R. at 47, the existence of a judgment claim secured directly by a supersedeas bond and indirectly by the debtor's property meets this high threshold. *Compare GAF Corp. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 26 B.R. 405, 418–19 (Bankr.S.D.N.Y.1983) (denying motion by unliquidated tort claimants for relief from stay to liquidate their claims in non-bankruptcy lawsuits) *with In re Johns–Manville Corp.,* 26 B.R. at 432–33 (granting stay relief to creditors holding non-final judgments secured by supersedeas bonds to authorize debtor to proceed with appeals). Richter has, therefore, also demonstrated under the relevant *Sonnax* factors that relief from the stay will lead to a complete resolution of the issues concerning the amount of Richter's claim and Keene's interest in its underlying collateral, and result in judicial economy through the expeditious and economical determination of their dispute.

### C. Keene's Response

■ Richter's showing shifts the burden of ultimate persuasion to Keene to prove that cause does not exist. 11 U.S.C. § 362(g)(2). Keene, however, has failed to carry this burden. First, Keene has failed to show that the prejudice it will suffer if relief from the stay is granted is greater than the prejudice Richter will suffer if the stay continues. Keene points to the increased cost in prosecuting the appeal, but the increased litigation costs do not rise to the level of "great prejudice". *See In re Anton,* 145 B.R. at 770; *In re Rabin,* 53 B.R. 529, 531–32 (Bankr.D.N.J. 1985) (the debtor failed to show that the liquidation of the tort claim, which would have to occur in any event, would be more expensive in state court, or so prejudicial, as to require continuance of the stay); *In re Johns–Manville Corp.,* 26 B.R. at 433. Here, too, the Richter claim must be liquidated. The state court has already done it, and Keene has failed to show that it could be liquidated anew in the Bankruptcy Court, or if it could, that it can be liquidated more economically in Bankruptcy Court.

■ Second, although a debtor's inability to retain appellate counsel militates against granting relief from the stay, *Sheldon v. Munford, Inc.,* 902 F.2d at 9, this argument, which Keene continues to press, has lost much of its force. This case is eight months old, and since the filing of the petition, the non-final judgment claims have been the subject of numerous proceedings. During this period, Keene was warned that it would have to retain appellate counsel to deal with approximately sixty non-final judgments, and has had ample opportunity to do so. In any event, the Court recently authorized Keene

**3.** Under 11 U.S.C. § 502(c), the court can estimate a claim if it is contingent or unliquidated, and cannot be fixed and liquidated without unduly delaying the administration of the case. A non-final judgment claim—which is neither contingent nor unliquidated—cannot be estimated.

to retain the same firm that handled the Richter case prior to the petition, and past experience indicates that counsel will have ample opportunity to "get up to speed" before oral argument ever occurs.

Third, the balance of equities does not tip in Keene's favor merely because Richter has already recovered 85% of her judgment from the other defendants. The New Jersey judgment reflects the jury's determination regarding the amount necessary to compensate Richter for her claims. The fact that she has received 85% means that she has not been fully compensated. Although this places her in a better position than the unbonded creditors, that is beside the point; she should not be denied her *legally* superior position because the other creditors do not share it.

■ The Court has considered Keene's remaining arguments, and they lack merit. For example, Keene has argued throughout the history of this case that the asbestos judgments are tainted, and the Court should not permit these creditors to enforce their claims against the bonds. *See In re Keene Corp.*, 162 B.R. at 945–49.[4] Keene correctly notes that the ability to subordinate the movant's claim should be considered, *Sonnax Industries*, 907 F.2d at 1286, and in this regard, the Court can subordinate punitive damage claims. *In re Johns–Manville Corp.*, 68 B.R. 618, 627–28 (Bankr.S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987); *In re Colin*, 44 B.R. 806, 810 (Bankr.S.D.N.Y. 1984); *cf. Rothberg v. Kirschenbaum (In re Beck Indus., Inc.)*, 725 F.2d 880, 891–92 (2d Cir.1994) (Friendly, C.J.) (bankruptcy court should subordinate punitive damage claims against Chapter X trustee to protect the estate). Further, a bankruptcy court should not exercise its equitable powers to enable a creditor to proceed against a bond if the debtor can avoid the transfer of the underlying collateral. *See In re Gerstenzang*, 52

F.2d at 864; *In re Celotex Corp.*, 128 B.R. at 484.

Keene, however, has failed to show that Richter's claim could be subordinated or disallowed, in whole or in part, if asserted against the estate, or that its transfer of collateral to secure the standby letter of credit can be avoided. The judgment is compensatory only, and does not include punitive damages. In addition, Keene transferred its collateral to the issuer of the standby letter of credit outside of the "preference" period, and no one has suggested any other basis to avoid that transfer.

Further, Keene has also failed to show that there are other sources of payment that Richter can pursue. Keene is the only remaining defendant, and hence, there are no other defendants or bonds that Richter can or should be required to look to, under a theory of marshalling of assets, before she is permitted to recover a judgment against Keene or collect that judgment from its surety.

Lastly, *Chaussee v. Lyngholm (In re Lyngholm )*, 24 F.3d 89 (10th Cir.1994), which Keene suggests requires further consideration and may affect the Court's determination, is distinguishable. In *Lyngholm*, the claimant obtained a pre-petition judgment which was on appeal at the time that the petition was filed. Although relief from the stay was never granted, the debtor proceeded with the appeal and obtained a judgment that reversed the trial court, and remanded the case with instructions regarding the proper method for valuing the claim. *Id.* at 90.

Thereafter, the claimant sought relief from the automatic stay to permit the state trial court to liquidate the claim based upon the appellate court's instructions. *Id.* at 91.

---

4. In *In re Johns–Manville Corp.*, 26 B.R. at 433, the court rejected the argument that it was unfair or inequitable to grant relief from the automatic stay to continue the appeal of a judgment which included a punitive damage component. The court ruled that the debtor bore the risk of this inequity as a result of posting the supersedeas bond. Because the Richter judgment is wholly compensatory, this Court need not reach that issue. While the Court has previously upheld the enforceability of "final" punitive damage judgments against supersedeas bonds, *In re Keene Corp.*, 162 B.R. at 946–49, that decision was made in the context of a motion for a preliminary injunction to prevent the enforcement against a third party of rights in property that was not property of the estate rather than in connection with a motion for relief from the stay to require Keene to prosecute an appeal.

The bankruptcy court denied the motion, and instead, liquidated the claim on its own. *Id.* After the district court affirmed the order of the bankruptcy court, the claimant appealed to the Tenth Circuit Court of Appeals. *Id.*

The claimant made two arguments before the Tenth Circuit, but both were rejected. First, espousing a minority view, the Court of Appeals held that the filing of the petition did not stay the debtor's own appeals although, at the time the case was commenced, the debtor was the defendant. *See id.* at 91–92. Second, as a result of the reversal and remand, the claim became unliquidated, and the bankruptcy court was not required to accept the pre-petition judgment amount. While the bankruptcy court could have allowed the claim to be liquidated by the state court, it was not required to do so. *Id.* at 93.

*Lyngholm* is distinguishable from the instant case because Richter's judgment has not been vacated and remanded to the New Jersey trial court. If that occurs, then under *Lyngholm* the claim would become unliquidated, and the Bankruptcy Court, or District Court sitting in bankruptcy, can liquidate it in the same manner as the tens of thousands of other tort claims in this case that have never been reduced to judgment.

### CONCLUSION

Richter has carried her initial burden of going forward by showing cause for relief from the automatic stay. Keene has failed to carry its burden of ultimate persuasion that cause does not exist. *See* 11 U.S.C. § 362(g)(2). Accordingly, Richter's motion for relief from the automatic stay is granted to the extent of authorizing the continued prosecution of the direct and contribution appeals to the New Jersey appellate division, and thereafter, to the New Jersey Supreme Court.

This relief, however, is subject to two conditions. If the appellate division vacates or remands Richter's case to the trial court for the purpose of further consideration or proceedings involving the liquidation of the Richter claim, the stay will be reimposed. In addition, if Richter ultimately obtains a final judgment in her favor after the stay is lifted, she can collect the proceeds of the bond, but cannot otherwise enforce her final judgment against Keene's assets.

Settle order on notice.