**In re Lisa Michelle ROGERS, Debtor.**

**Bankruptcy No. 98–62410.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 14, 1999.

---

Garry Offerman, Offerman & Associates, Beaumont, TX, for First Bank & Trust.

Rodney S. Scott, Longview, TX, for Lisa Michelle Rogers.

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART THE MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY FIRST BANK & TRUST

BILL PARKER, Bankruptcy Judge.

This matter came before the Court on final hearing of the "Motion for Relief from Automatic Stay Against 1998 Pontiac Grand Am" (the "Motion") filed in this

case by First Bank & Trust ("Bank"), which seeks relief from the stay in order to pursue its state law remedies with regard to a 1998 Pontiac Grand Am automobile (the "Collateral" or the "Vehicle") against which the Bank asserts that it holds a perfected security interest. The Court took the matter under advisement in order to consider the Bank's demand that, for the duration of the period preceding the confirmation of the Debtor's proposed Chapter 13 plan and until such time as the Bank begins receiving payments under such confirmed plan, the Debtor should be required to make direct adequate protection payments to the Bank, in addition to making the required payments under her proposed Chapter 13 plan.

## I. *JURISDICTION.*

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Lisa Michelle Rogers (the "Debtor") purchased a 1998 Pontiac Grand Am automobile for which the Bank provided purchase-money financing in the amount of $15,666.34. Prior to the filing of this case, the Debtor had made six of sixty monthly payments of $316.90 required under her contract with the Bank.

Following the filing of the Debtor's voluntary petition for relief under Chapter 13 of the Bankruptcy Code, the Bank filed the present motion for relief from automatic stay against the Debtor, alleging that its interests in the vehicle were not being adequately protected by the Debtor and that the vehicle was not necessary for the effective reorganization of the Debtor.

The Bank further asserted that, in the event that the stay was not terminated, the Debtor should be ordered to make interim adequate protection payments of at least $300.00 per month as a component of the adequate protection to be supplied to the Bank. The Debtor objected to the Motion and asserted at the hearing that the Vehicle is necessary for an effective reorganization of the Debtor and that the Bank's interests are adequately protected, both at the present time and during the pendency of the plan, if confirmed, because the Vehicle is insured, the Debtor's plan proposes to pay in full the Bank's secured claim as submitted at the contractual rate of interest and the Debtor is current on her plan payments.

The parties have stipulated for the purpose of the Court's consideration of the Motion that the Bank holds a valid and subsisting claim against the Debtor in the approximate amount of $14,591.82 and that the Bank has a valid, existing and perfected lien upon the Vehicle. The Vehicle is covered by full coverage insurance, which lists the Bank as the lienholder and/or loss payee.

The Debtor's Schedules I and J reflect a current net income of $684.08 and current expenditures of $381.00, leaving a difference of $303.08 as excess income. These figures were based upon the Debtor's former employment with Midwest Truck After–Market Accessories. The Debtor has since changed jobs and now enjoys a higher paying position at a Tyler automobile dealership.[1] The Debtor is employed full-time and she states that she has opportunities for advancement. A wage withholding order is in place through which the Debtor's plan payment will be deducted by her employer and forwarded to the Chapter 13 Trustee. Thus, the Court finds that it is more likely than not that the Debtor will be able to perform her financial obligations

---

1. Since the time of the hearing, the Debtor has amended her budget to reflect her new employment with a net monthly income of $1050.66 and monthly expenses of $ 552.00, leaving excess income totaling $498.66.

under the proposed plan, if confirmed, by tendering the required plan payments.

The Vehicle constitutes the Debtor's sole means of transportation. Without the availability of the Vehicle, the Debtor would be unable to make her 60–mile daily round-trip commute to work in Tyler from her home in nearby Chandler, Texas. In addition to needing the Vehicle to maintain her employment, the Debtor also has a substantial need for the Vehicle for important personal reasons. The Debtor is recently divorced and is the mother of a young son who lives with his father in Port Arthur. In reliance upon an agreement with her ex-husband, the Debtor currently enjoys visitation rights with her son every other weekend. She testified that she makes an approximate 400–mile round-trip journey to Port Arthur at the beginning of such a weekend to pickup and bring her son to Chandler. She then makes a return round-trip to Port Arthur at the conclusion of such weekend in order to return him to his father's custody. According to the Debtor's uncontradicted testimony, this arrangement has been in existence for several months and she would not be able to engage in such important maternal visits with her son without solid, reliable transportation. She testified, again without contradiction, that the Vehicle is required to meet her primary transportation needs and that, as evidence of her reliance upon the Vehicle, she had placed approximately 30,000 miles upon the Vehicle in her first ten months of ownership.

The Debtor has proposed a Chapter 13 plan in this case. Under the proposed plan, the Bank's secured claim will be paid in full at the contractual rate of interest over a period of sixty (60) months. The plan payments will be funded by a monthly payment of $300.00 per month for the first twelve months of the plan, with an increase to $435.00 per month for the remaining forty-eight (48) months. The proposed plan further provides that an ad-ministrative claim for attorneys' fees in the amount of $1,800.00 will be paid "through first available funds."

## III. *DISCUSSION*

§ 362(d) of the Bankruptcy Code provides that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if:
>
> (A) the debtor does not have any equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

■ In stay relief litigation, though the party opposing stay relief, usually the debtor, has the ultimate burden of persuasion (or the risk of non-persuasion) as to all stay issues except the existence of equity pursuant to 11 U.S.C. § 362(g), the party requesting relief from the stay must sustain an initial burden of production or going forward with the evidence to establish that a *prima facie* case for relief exists before the respondent is obligated to go forward with its proof. *See generally, In re Kowalsky,* 235 B.R. 590, 594 (Bankr. E.D.Tex.1999), *citing Sonnax Industries, Inc. v. Tri–Component Products Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280 (2nd Cir.1990); *In re Powell,* 223 B.R. 225, 232 (Bankr.N.D.Ala.1998); and *Vincent Properties, Inc. v. Five Star Partners, L.P. (In re Five Star Partners, L.P.),* 193 B.R. 603 (Bankr.N.D.Ga.1996). If the movant fails to establish such a *prima facie* case for relief,[2] the court should deny

---

2. This case illustrates the expediency of moving for judgment under Fed.R.Bankr.P. 7052(c) when a movant has failed to establish a *prima facie* case for relief under § 362(d).

the relief requested. *In re Keene Corporation*, 171 B.R. 180, 182 (Bankr.S.D.N.Y. 1994).

■ The Bank failed to establish a *prima facie* case for relief under § 362(d)(2) because the Bank failed to present any evidence regarding the Debtor's lack of equity in the subject vehicle. As a result, the burden never shifted to the Debtor-Respondent to show that the property is necessary for an effective reorganization, *In re Elmira Litho, Inc.*, 174 B.R. 892, 901 (Bankr.S.D.N.Y.1994), and thus the relief requested by the Bank under that subsection must be denied. *In re Keene Corporation*, 171 B.R. at 182.

■ As is typical, the Bank also seeks relief from the stay "for cause" under § 362(d)(1), alleging a lack of adequate protection of its interest in the Collateral. While a respondent ultimately carries the burden of persuasion to establish that a movant's interests in certain collateral are adequately protected, the movant must again first establish a *prima facie* case that such cause exists. To establish a *prima facie* case for cause due to a lack of adequate protection, a movant must initially demonstrate that it holds a claim, secured by a valid, perfected lien upon estate property and that a decline in the value of its collateral is either occurring or is threatened [3], against which the creditor is precluded from protecting its interests due to the existence of the automatic stay. Once the movant presents such a *prima facie* case, the burden shifts to the debtor-respondent to prove that the collateral is not declining in value or that the secured creditor is adequately protected. *Kowalsky*, 235 B.R. at 595 and the cases cited therein.

Rather than moving for judgment on the claim for relief under § 362(d)(2), the debtor-respondent in this case proceeded with the presentation of her evidence. In her gratuitous attempt to demonstrate that the subject vehicle was necessary for an effective reorganization under the § 362(d)(2) standard, she unwittingly supplied evidence for the Bank's § 362(d)(1) case regarding the lack of ade-

Similar to the § 362(d)(2) case, there was a significant likelihood that the Debtor could have successfully moved for judgment as to the § 362(d)(1) claim at the conclusion of the Bank's presentation of its case because the Bank's evidence regarding a purported decline in the value of its collateral was insufficient. However, as indicated earlier, the Debtor elected to proceed with the presentation of her case and her evidence unequivocally, though obviously inadvertently, demonstrates that the Vehicle is subject to rather strenuous use by the Debtor which in turn establishes, by a preponderance of the evidence, that an unquantified decline in the value of the Bank's collateral is occurring. The Debtor therefore further assumes the burden to demonstrate that the Bank's interest is adequately protected.

■ The determination of whether a creditor's interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic, requiring a court to balance all relevant factors in a particular case, including the value of the collateral, whether the collateral is likely to depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan. *In re Olick*, 221 B.R. 146, 161 (Bankr. E.D.Pa.1998). Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. *Id.*

The Debtor sought to uphold its burden to demonstrate that the Bank's interest in the Collateral is adequately protected by establishing that, in addition to maintaining insurance on the Vehicle, she is cur-

quate protection by clearly demonstrating that the subject vehicle was depreciating when the Bank had not clearly done so.

3. Such a "threat" of decline could include, for example, a debtor's failure to maintain adequate insurance on the collateral.

rent on payments under her proposed plan which contemplates the complete satisfaction of the Bank's allowed secured claim. The Debtor claims that these elements have historically constituted adequate protection of a creditor's interest in the Eastern District of Texas, notwithstanding the fact that, given the Chapter 13 confirmation procedure utilized in this district, there is a period of several months in the pre-confirmation period during which the Bank is receiving no payments while the Debtor continues to enjoy the benefits of the Vehicle. Conversely, the Bank argues that, in order to account for the decline in its interest due to the Debtor's continued use of the Vehicle in the pre-confirmation period, the Debtor should be required to make direct adequate protection payments to the Bank, while continuing to make all required plan payments to the Trustee. Because the determination of this issue has implications beyond the scope of this singular case, the Court has given careful consideration to this issue and the ramifications resulting from the endorsement of any of a number of proposed resolutions to this problem.

*Evaluation of the Existing System*

With regard to the administration of Chapter 13 cases filed within its boundaries, the Eastern District of Texas has historically been what is denominated in Chapter 13 phraseology as a "late confirmation" district. That is, the confirmation hearing in a Chapter 13 case in this district is not scheduled to occur until the deadline established for the filing of all claims in the case has passed. Other bankruptcy courts in different regions of the country are denominated as "early confirmation" districts because they have chosen to accelerate the scheduling of Chapter 13 confirmation hearings to various times in earlier phases of the case. Some courts conduct Chapter 13 confirmation hearings as early as the date upon which the § 341 meeting of creditors is conducted. Undoubtedly some of those districts have accelerated the confirmation hearing date in order to resolve the problems addressed by this Court today; however, it is apparent from the jurisprudence of those districts that the "early confirmation" process comes with its own set of problems. Attendance at any multi-district seminar regarding Chapter 13 administration will disclose a variety of approaches which are not only heartily embraced, but are evangelically advocated by respected judges and trustees with equivalent experience and expertise in Chapter 13 cases. There are sound policy arguments which support a number of those positions.

That debate, however, will not be resolved within the confines of this opinion. Notwithstanding the enticing features of the altar call issued by the advocates of early confirmation, this Court is not inclined at this time to change the historical practice of handling Chapter 13 cases in this district. Though many observers would claim that late confirmation is not mandated by the Bankruptcy Code nor necessary to the successful administration of Chapter 13 cases, one can make a persuasive case that the Code envisions a late confirmation process and this Court has found that the conclusion of the claims resolution process and the ability to gauge the debtor's performance are but two of the benefits which are useful in determining with a greater sense of finality any disputes which may occur within the context of a Chapter 13 confirmation. However, the Court must acknowledge that deferring the confirmation hearing to a latter time in the proceeding engenders certain negative consequences which develop in the intervening months as the parties await the confirmation hearing.

During the pre-confirmation period, absent an agreement to the contrary,[4] no payment is made to a secured creditor. If the case fails and the case is dismissed or

---

**4.** The Court notes the prevalence of agreements pertaining to motions for relief from

stay under which debtors are often required to make certain pre-confirmation payments.

converted, a secured creditor in this district generally receives no money despite the continued use of its collateral for perhaps several months in the pre-confirmation period.[5] In addition to the lack of payments for a substantial period of time, a secured creditor finds itself, in the event of a dismissal, transported to the precise position which it occupied months earlier, prior to the filing of the bankruptcy case. It is left to pursue its state court remedies, but with a significant risk of repeating the process if the debtor has not been precluded from filing another bankruptcy case.

Even if the Chapter 13 plan is confirmed, it activates what has developed into an almost universal plan provision in this district: that first available funds distributed by the Chapter 13 Trustee will go to the payment of the fees for the debtor's attorney. There is nothing impermissible about this provision and, in fact, it is expressly authorized, though not mandated, by § 1326(b)(1) of the Bankruptcy Code.[6] However, depending on the size of the monthly plan payment being paid by a debtor, it is undoubtedly true that a secured creditor is often not paid from the first distributions arising from a confirmed plan in this district, despite the fact that its collateral has been used throughout the pre-confirmation period without remuneration of any kind.

■ Under this system as it currently exists in this district, it is apparent that the risk of failure of a Chapter 13 case is entirely placed upon the shoulders of secured creditors. Some will undoubtedly argue that that is precisely where it should be. Such advocates often attempt, usually unsuccessfully, to articulate an argument regarding the creditor's superior capability to spread the risk of any such loss. Such advocates also propose that the failure to

guarantee the availability of the "first available funds" provision for debtors' lawyers in every case will have an apocalyptic effect on the bankruptcy system by eliminating the availability of qualified, competent Chapter 13 attorneys who would not choose to engage in a Chapter 13 debtor practice under such a system. While that argument is undoubtedly speculative and probably overstated, this Court must certainly acknowledge that Chapter 13 debtors in this district, as well as this Court, benefits from the services of skilled Chapter 13 practitioners from the debtor's side. While this Court does not wish to discourage them from providing needed services to needy individuals in this district, this Court is of the firm opinion that one cannot violate the plain language of the Bankruptcy Code in order to insure that result. Further, while the Court has repeatedly gone on record in support of the proposition that the debtor's attorney in a Chapter 13 case is not a *guarantor* of a successful result in any particular case, in the opinion of this Court, neither should such practitioner be completely insulated from the risk of failure at the expense of secured creditors.

*A Search for Synthesis*

Though the Court has concluded that the current system, under which a secured creditor receives no payment for a series of months while its collateral is subject to reduction in value, is untenable, to ascertain and implement a system consistent with the Bankruptcy Code in this area, is, in the most forceful sense of understatement, a challenging task. It is daunting because the Code contains provisions which are difficult, if not impossible, to rectify. Clearly a secured party has a right to adequate protection of its interests

---

5. In the event that a plan is not confirmed, in the absence of an agreement to the contrary, a trustee is required under § 1326(a)(2) to return to the debtor any plan payments retained by the trustee after deducting any unpaid § 503(b) claim.

6. § 1326(b)(1) provides as follows:
 (b) Before or at the time of each payment to creditors under the plan, there shall be paid—
 (1) any unpaid claim of the kind specified in section 507(a)(1) of this title.

as provided by §§ 361–363 of the Code. Yet § 1326(a)(2) mandates that the trustee retain all plan payments until confirmation or denial of confirmation of a plan. One of the obvious advantages of the early confirmation process is that the ruling is made and the trustee can begin distribution of plan payments.

In a late confirmation district, however, what is the proper reconciliation of these policies? Certainly to require periodic cash payments directly to a creditor is one method by which a court may provide for the adequate protection of a creditor's interest, but to do so raises serious problems which courts have struggled to solve. How should such payments be structured? Should they be in addition to and distinct from the plan payments made by the debtor to the trustee? Even though a defensible characterization of such payments as "reasonably necessary for the maintenance and support of the debtor or a dependent of the Debtor" could likely be constructed so as to avoid a violation of the disposable income rule [7] applicable to the confirmation of a vast majority of Chapter 13 plans in this district, in the opinion of this Court, to impose such a requirement upon debtors in this district would preclude the confirmation of a Chapter 13 plan for a substantial number of debtors by simple arithmetic. Many debtors simply do not possess the resources necessary to make such additional payments while maintaining their pre-confirmation plan payments to the trustee. This is particularly true for debtors who are addressing more than one secured claim in their plan. Perhaps some would conclude that such was Congress' intent; but the more *clearly articulated* congressional intent is the encouragement of individuals to restructure obligations under the provisions of Chapter 13 and this Court is of the opinion that it should not preclude honest debtors from reorganizing under Chapter 13 by imposing financial demands upon them which they simply cannot meet.

This is undoubtedly true in other areas and to avoid this problem, this Court has examined diverse methods taken by other courts as they have attempted to provide adequate protection remedies in a manner consistent with the rehabilitative provisions of Chapter 13. Some courts impose an adequate protection lien on plan payments made to the trustee based upon a decline in value of the collateral and distribute such proceeds upon confirmation. However, that remedy introduces an undesirable race to the courthouse among secured creditors of a debtor to obtain the preferential lien position on such funds. Other courts authorize pre-confirmation distributions by the trustee, notwithstanding the prohibition of § 1326(a)(2), by entering interim confirmation orders or by changing the nomenclature describing payments made by the debtor to the trustee in the pre-confirmation period. Other courts are less subtle and simply authorize the debtor to make the payment directly to the creditor and to deduct the amount of such payment from the plan payment made to the trustee. This is essentially a declaration that a debtor may proceed to pay directly impaired secured claims prior to the confirmation of a plan, even though the trustee would be clearly prohibited from doing so.

This recitation is not intended as a criticism of any court.[8] As stated earlier, the task to reconcile these competing policies is arduous and the reality of that struggle is evident in the jurisprudence. This Court has uncovered no Rosetta Stone which deciphers this formidable problem. However, this Court is in agreement with the observations of the Chief Judge of this Court when he recognized in an unpublished opinion that a reconciliation of these issues must be performed with an empha-

---

7. 11 U.S.C. § 1325(b)(1)(B)

8. Consistent with that intent, specific case and rule citations have been omitted in this instance.

sis upon the precise provisions and rehabilitative intent of Chapter 13.[9] However, that is not to say that nothing can be done to provide greater protection of the interests of secured creditors during the pendency of a Chapter 13 plan.

*Some Initial Steps*

If a comprehensive solution to these issues cannot be presented, some would advise to simply leave well enough alone. Once one becomes cognizant of the quagmire presented in this area, there is certainly a great temptation to sidestep it and to simply allow the status quo to remain. Even more compelling to this Court, however, is the need to take some initial affirmative steps to try to provide a more balanced recognition of the competing interests which are always present in a Chapter 13 case, even if a complete systematic resolution cannot be reached.

Consistent with the recognition of his right to restructure his financial affairs under the provisions of Chapter 13, a debtor still possesses the duty to provide adequate protection of a creditor's interest in collateral. One method of providing such protection is to insure that payments on a secured claim are initiated as quickly as possible, but in a manner consistent with practical financial considerations and the language of § 1326(a)(2) which prohibits interim payments by the trustee until the confirmation or denial of the confirmation of the plan. While observing such practical and legal restrictions, provisions can be made to insure that secured creditors receive funds from the initial distributions made by the trustee upon confirmation of the plan.

 That has not traditionally occurred in this district, due to the local practice of designating that "first available funds" be paid to the debtor's attorney. While prompt compensation of professionals is certainly one objective of the Bank-

ruptcy Code, the protection of creditor interests is given an equivalent degree of prominence, and there is nothing in the Bankruptcy Code which prohibits a more equitable distribution of the plan payments upon confirmation. In fact, § 1326(b) specifically authorizes the payment of administrative claims either "before or at the time of each payment to creditors under the plan." It is undoubtedly true that a delay in the receipt of plan payments is a necessary consequence in a "late confirmation" district. However, under circumstances in which a creditor's interest is deserving of additional protection, as in this case, to add to that delay by preventing the receipt of *any* payment by a secured creditor in deference to the full and complete payment of professional fees is inconsistent with provisions of the Bankruptcy Code and can no longer be endorsed by this Court. Accordingly, the Debtor in this case shall be required to modify her Chapter 13 plan to provide that, following the payment of the percentage fee fixed and owing to the Chapter 13 Trustee under 28 U.S.C. § 586(e)(1) and (2), the funds to be distributed under the confirmed plan shall be halved, with one-half (½) of such funds to be distributed equally among the Bank and any other party authorized to share in such a distribution pursuant to an order of this Court; and the remaining one-half (½) of such funds to be distributed equally among the attorney for the Debtor and any other holder of an unpaid claim of the kind specified in § 507(a)(1) of the Bankruptcy Code, with such division of funds to continue until such time as the unpaid claims under § 507(a)(1) have been paid in full.

What about the unfortunate situation in which a debtor is unable to maintain the required plan payments or is otherwise precluded from fulfilling the standards required for confirmation of a Chapter 13 plan, thus resulting in the dismissal or

---

9. Chief Judge Donald R. Sharp issued findings and conclusions on this general topic in 1998 during an oral ruling upon a motion for

relief from automatic stay in the case of Brian and Jacqueline Smiddy, case no. 98–20765.

conversion of the case? In such a circumstance, plan payments previously made to the trustee are normally returned to the debtor.[10] Such a return of funds to the debtor occurs frequently, notwithstanding the fact that a secured creditor entitled to adequate protection of its interest, who has been subjected to the automatic stay in almost all instances by the voluntary act of the debtor in filing the petition, has again received no payment since the inception of the case while the debtor has continued to use the collateral during that time period. Now that the debtor's Chapter 13 effort has failed, the debtor recoups any plan payments he has tendered to the trustee, in the absence of a court order to the contrary, while the affected creditor is left to its state law remedies without any type of payment. This scenario is familiar to anyone with any degree of exposure to Chapter 13 cases. The frequency of such an occurrence lessens to a significant degree the protection afforded to a secured creditor by the fact that the debtor may presently be current on payments under a proposed plan which contemplates the satisfaction of the creditor's secured claim.

However, the significance to that secured creditor of the debtor's ability to perform his plan obligations can be increased by requiring the debtor to tender to that creditor the right to a share of the funds held by the Chapter 13 trustee, in the event that the Chapter 13 case is dismissed or converted. By allowing a secured creditor to receive an equivalent share of the accumulated plan proceeds on an equivalent basis with any similarly-situated secured party, as well as any holder of an unpaid § 503(b) administrative claim, the risk of failure in the case is more equally reapportioned and the adequacy of that creditor's protection is undoubtedly elevated. The equal distribution will also preclude any renewed "race to the courthouse" among claimants to obtain a preferential position for the receipt of those returned payments. This is not a novel concept nor one which debtors should find threatening, since this Court has observed that most of the agreements regarding stay motions in Chapter 13 cases contain some type of provision for the transfer of a portion of plan payments to a secured creditor upon conversion or dismissal. That fact alone demonstrates that creditors believe that their interests are more fully protected under that type of provision and that it is reasonable to expect debtors to relinquish control over funds which otherwise would return to them in order to increase their chances of successfully restructuring their financial affairs.

## IV. CONCLUSION

Therefore, the Court orders that the Motion for Relief from Automatic Stay Against 1998 Pontiac Grand Am filed in this case by First Bank & Trust is granted in part and denied in part and that the continuation of the automatic stay provided under 11 U.S.C. § 362(a) as to the Debtor's 1998 Pontiac Grand Am automobile is hereby conditioned upon the fulfillment of the following conditions, in order to provide adequate protection of the Bank's interest in the Vehicle:

(1) that the Debtor will maintain a policy of full coverage insurance on the Vehicle which lists the Bank as the lienholder and/or the loss payee at all times during the pendency of this case until such time as the Bank's secured claim is paid in full;

(2) that the Debtor will allow no person to operate the Vehicle other than those persons listed as insured drivers under the policy of insurance covering such Vehicle;

(3) that the Debtor shall at all times remain current in her payments to the Chapter 13 Trustee pursuant to her proposed Chapter 13 Plan;

(4) that any provision currently existing in the Debtor's proposed Chapter 13 plan, which proposes that "first funds" be distributed by the Chapter 13 Trustee to the

**10.** *See supra* note 5.

attorney for the debtor or which otherwise grants a distribution priority to the holders of unpaid administrative expenses under § 507(a)(1) over the distributions due and owing to the Bank under the proposed plan, will be modified by the Debtor prior to confirmation to provide that, following the payment of the percentage fee fixed and owing to the Chapter 13 Trustee under 28 U.S.C. § 586(e)(1) and (2), the funds to be distributed under the confirmed plan shall be halved, with one-half (½) of such funds to be distributed equally among the Bank and any other party authorized to share in such a distribution pursuant to an order of this Court; and the remaining one-half (½) of such funds to be distributed equally among the attorney for the debtor(s) and any other holder of an unpaid claim of the kind specified in § 507(a)(1) of the Bankruptcy Code, with such division of funds to continue until such time as the unpaid claims under § 507(a)(1) have been paid in full; and

(5) that, in the event that this Chapter 13 case is dismissed or converted prior to the confirmation of a Chapter 13 plan, the Bank will be entitled to receive an equal distribution of the funds being held by the Chapter 13 Trustee, to be divided equally among the Bank, the holder of any unpaid claim allowed under § 503(b) of the Bankruptcy Code, and any party otherwise entitled to participate in such a distribution pursuant to an order of this Court.

Should the Debtor fail to fulfill conditions # 1 through # 3 as stated above, the Bank shall provide written notice of such default to the Debtor and her attorney by certified United States Mail, return receipt requested. If the Debtor fails to cure such default within ten (10) days of receipt of such notice, then the automatic stay shall automatically terminate without further notice, hearing, or order of this Court and the Bank shall file a certificate with the Court to evidence the termination of the stay. Further, the Debtor shall be allowed only one opportunity to cure any default of conditions # 1 through # 3 as set forth by this Court. Upon the second incidence of default, the automatic stay shall automatically terminate without further notice, hearing, or order of this Court and the Bank shall file a certificate with the Court to evidence the termination of the stay.

However, should the Debtor fail to fulfill condition # 4 as stated above, then the automatic stay shall automatically terminate without further notice, hearing, or order of this Court upon confirmation of a Chapter 13 plan in violation of condition # 4, and the Bank shall file a certificate with the Court to evidence the termination of the stay.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law [11] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

---

11. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.