**In re OFFERMAN FARMS, INC. Debtor.**

**Bankruptcy No. 86–004030W. Contested No. 852.**

United States Bankruptcy Court, N.D. Iowa.

Nov. 3, 1986.

Rush Shortley of Dumbaugh & Childers, P.C., for debtor.

John M. Titler of Lynch, Dallas, Smith & Harman, for Federal Land Bank.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS

RE: MOTION FOR MODIFICATION OF STAY AND ADEQUATE PROTECTION

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court is the Federal Land Bank of Omaha (Land Bank) Motion for Modification of Automatic Stay and Request for Adequate Protection. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

The Court has reviewed the pleadings, testimony, exhibits and briefs, and being fully advised makes the following Findings and Conclusions pursuant to F.R.B.P. 7052.

## FINDINGS OF FACT

The Debtor, a farm corporation, is indebted to the Land Bank by virtue of a promissory note dated March 31, 1982 in the principal amount of $432,700.00. Securing the note is a mortgage on parcels of real estate totalling 323 acres, in Buchanan County. The mortgage was properly recorded.

The mortgage also conveys as security all of the Debtor's interest in the "rents, issues, crops, and profits arising from" the real estate. In addition, the mortgage includes language which, in the event a foreclosure action is filed, entitles Land Bank to request appointment of a receiver to take possession of the mortgaged premises, with the usual powers of receivers in like cases.

On February 17, 1986 Land Bank mailed to the Debtor an acceleration letter (Exh. # 1) stating that unless the entire amount of the debt was paid on or before March 3, 1986, Land Bank would begin foreclosure proceedings. The Debtor's filing of a Chapter 11 bankruptcy petition intervened on February 27, 1986.

At hearing, the parties stipulated that the Debtor had no equity in the mortgaged real estate, but that it was necessary to an effective reorganization. Thus, Land Bank

agreed that it would pursue relief only under 11 U.S.C. § 362(d)(1).

The Debtors argue no adequate protection in the form of any cash payment be made at this time. However, the Debtors did offer adequate protection in the event this Court rules adequate protection must be paid. That protection is to be paid from the 1986 crop and secured by a lien on the crop.

Based on the credible testimony of the Land Bank's appraiser, the Court finds the fair rental value of the real estate is $90.00 per acre for 156 acres ($14,040.00) and $65.00 per acre for 110 acres ($7,150.00) totalling $21,190.00.

The Court finds the fair rental value for other items of Land Bank collateral as follows:

| | | |
|---|---|---|
| 70,000 bu. grain storage @ 12¢ | = | $8,400.00 |
| hog unit, 1,200 head/year @ $5.25 head | = | $6,300.00 |
| machine shed | = | $1,400.00 |
| home @ $275.00/month | = | $3,300.00 |

The total annual rental income that could be expected from the mortgaged realty is $40,590.00.

If Land Bank were to foreclose on the Debtor's mortgage, and the state district court were to appoint a receiver to take possession of the property, Iowa Code § 654.14 would govern the income derived from the property. The priority expense is the cost of the receivership, which according to credible testimony, is 7½% of the gross rental income (before taxes and insurance). The Court finds the receivership costs in this case, based on a gross rental income of $40,590.00, would total $3,044.00. Second and third in line for income from the property are taxes and insurance. The Court finds that real estate taxes total $8,012.00 annually and that the cost of insurance is $1,200.00 annually.

Fourth in line for payment would be Land Bank, which could expect an income of $28,334.00 from the real estate in receivership. The Court finds that this amount, together with payment of the taxes and insurance, will adequately protect Land Bank for the entire 1986 crop year.

If a receiver were appointed, the receiver would manage the property and make periodic reports to the Court. These are the same fiduciary duties imposed upon the Debtor as debtor-in-possession under Chapter 11. Therefore, the Debtor may retain the $3,044.00 which would otherwise be paid to the receiver.

## DISCUSSION AND CONCLUSIONS OF LAW

Given the stipulation with regard to necessity for reorganization, Land Bank's withdrawal of its claim for relief under § 362(d)(2) of the Bankruptcy Code is appropriate, and withdrawal is granted as a matter of law.

§ 362(d)(1) provides that the court shall terminate, annul, modify, or condition the automatic stay for cause, including the lack of adequate protection of an interest in property. The parties have presented the adequate protection issue framed in terms of a determination by the Court of whether, and in what amount, Land Bank is entitled to adequate protection. In particular, the parties raise the issue of the effect the recent Eighth Circuit opinion in the case of *In re Ahlers,* 794 F.2d 388 (8th Cir.1986) may have upon the right to lost opportunity costs and other adequate protection under the facts of this case.

### I. *Adequate Protection*

■ Adequate protection, undefined in the Code, is a question of fact, *In re Martin,* 761 F.2d 472, 474 (8th Cir.1986), and determination of adequate protection must necessarily turn on the unique facts presented in each individual case. *Ahlers,* 794 F.2d at 395.

■ The most basic component of adequate protection is that which reimburses a creditor for decreases in the value of his interest caused by imposition of the automatic stay, or of use of the collateral by a debtor. Specific reference to adequate protection for decrease in value of collateral is found at § 361(1) and (2).

However, the scope of the "interest in property" subject to the adequate protection entitlement is broader than the mere value of the collateral. Adequate protection is to be provided for all of a creditor's legal and equitable interests in property. H.R.Rep. No. 595, 95th Cong., 2d Sess. 338 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6294. Said another way, adequate protection should, as nearly as possible under the circumstances of the case, provide the creditor with its bargained-for rights. *Ahlers*, at 394–5.

One of the rights bargained for between Land Bank and the Debtor, reflected in the mortgage, and provided for in the Iowa Code, is the right to file a foreclosure petition and request the appointment of a receiver to collect rents and profits. Though it had not taken this step against the Debtor before the bankruptcy filing, it is a right subject to adequate protection in this court.

Debtor argues that *Ahlers* prohibits the payment of any adequate protection payments until, under state law, the creditor could have taken possession of the collateral, sold it to a third party, and reinvested the proceeds. Debtor argued this would be a period of approximately 16 months from the date Land Bank filed its Motion to Lift Stay.

This Court concludes, however, that the Debtor's reading of *Ahlers* is overly broad. In *Ahlers*, the Court made specific reference to the fact that during Minnesota's twelve month redemption period, the mortgagor is entitled to possession, and rents and profits of the real estate. *Ahlers* at 397. Thus, unlike Iowa law, Minnesota law does not allow for the appointment of a receiver during the pendency of the foreclosure or during the period of redemption following the sheriff's sale. Chapters 654 and 680 of the Iowa Code allow a secured creditor to have a receiver appointed to take possession of the property and collect rents and profits during the pendency of the foreclosure action. This is a valuable right which deserves protection during the pendency of the automatic stay.

One of the essential holdings of *Ahlers* is that in providing adequate protection, the Bankruptcy Court must look to underlying state law as well as the practical realities of foreclosure and resale of real estate. In essence, *Ahlers* is a "but for" analysis of what would have happened had bankruptcy not intervened. The Court in *Ahlers* analyzed applicable Minnesota law and the practicalities of resale of farm real estate to come to the conclusion that the Ahlers' real estate could not be sold by the Federal Land Bank for up to one year and six weeks after foreclosure was commenced, and that the Federal Land Bank would realize no income nor rents and profits from the property for up to one year and six weeks after the foreclosure was commenced. Applying the same "but for" analysis to Iowa law shows that during the period of foreclosure and redemption, Land Bank in this case could realize rents and profits from the property. Thus, under *Ahlers*, there is an obligation to adequately protect the Land Bank's contractual and statutory right to have a receiver appointed and receive rents and profits during the pendency of the foreclosure and redemption.

Accordingly, the automatic stay will remain in effect, provided the Debtor makes the following adequate protection payments:

1. Debtor shall keep all real estate taxes current and shall pay all taxes before they become delinquent.

2. The Debtor shall maintain the same level of insurance on the property as prior to the filing of the Chapter 11 Petition. The Debtor shall furnish to Land Bank a copy of a certificate of insurance evidencing the purchase of and payment for the applicable insurance.

3. The Debtor shall pay to Land Bank the sum of $28,334.00 on or before December 15, 1986. Land Bank shall be given a lien in the 1986 crop grown on the property which secures the Land Bank debt, as security for this adequate protection payment.

The *Ahlers* decision also discussed the applicable starting date for any ade-

quate protection payments. Since foreclosure had not been initiated prior to the bankruptcy filing, those payments cannot start any earlier than the date the creditor requests adequate protection. *Ahlers* at 396. Since the Motion to Lift Stay in this case was not filed until May 14, 1986, the adequate protection payments provided for above shall cover the year from May 14, 1986 to May 13, 1987.

### II. Lost Opportunity Costs

Debtor's argument in opposition to payment of adequate protection of the stay against appointment of receiver equates the rents and profits which a receiver would receive with the concept of lost opportunity costs.

The concept of lost opportunity costs as an element of adequate protection came to prominence in the case of *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984). Various other courts have addressed the lost opportunity costs issue; the Eighth Circuit considered the concept in the case of *In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985).

■ The theory of lost opportunity costs is that but for the imposition of the automatic stay, the creditor could have repossessed the collateral, sold it, and reinvested the sale proceeds. The lost opportunity costs are the interest which would have been earned on the sale proceeds. Thus, it appears clear from the holding of these cases that payment of lost opportunity costs is a substitute interest payment by the debtor replacing the interest which a creditor would presumably earn had the automatic stay not been imposed. The undersecured creditor who could not otherwise accrue interest on its debt pursuant to 11 U.S.C. § 506(b) would still be allowed to obtain lost opportunity costs as a component of adequate protection. *American Mariner*, 734 F.2d at 435. *See also, In re Briggs*, 780 F.2d at 1340.

■ It is clear that the concept of lost opportunity costs is different and distinct from a creditor's right to have a receiver appointed during the pendency of foreclosure and to receive rents and profits through the receivership. Thus, providing adequate protection for the right to have a receiver appointed and the collection of rents and profits is not inconsistent with the denial or deferment of lost opportunity costs.

*Briggs* holds that a creditor is not entitled, as a matter of law, to lost opportunity costs; this holding is reaffirmed in the *Ahlers* decision. *Ahlers* then goes on to provide the method of calculating lost opportunity costs and the timing of payments in those cases where the trial court determines payment of lost opportunity costs is appropriate.

It is not clear whether the Land Bank is requesting lost opportunity costs in this case. Essentially, the request for adequate protection seeks to have the Court require the Debtor to adequately protect the rents and profits which would accrue during the pendency of a foreclosure proceeding and the subsequent period of redemption. Since this Court has given the relief requested, this Court does not feel there is any basis to award any further adequate protection by way of lost opportunity costs.

■ In any event, the award of lost opportunity costs is discretionary with the trial court. *See, In re Briggs,* 780 F.2d at 1351. Applying the *Briggs* factors (set out at 1349), this Court determines that the award of lost opportunity costs is not appropriate at this time. There is no claim that the collateral is currently decreasing in value; the collateral remains insured; the length of stay to date is relatively short, since the case was only recently filed; at this point the Court believes there is a reasonable likelihood that a plan of reorganization can be effectuated. However, this finding denying the award of lost opportunity costs is without prejudice to the Land Bank filing a subsequent motion in the event circumstances change or there is a protracted delay without the Debtor confirming a plan of reorganization.

Since the Court has determined that the awarding of lost opportunity costs would not be appropriate at this time, it is not necessary to go through the *Ahlers* analysis of the timing of such payments. Proof

on that issue and determination by the Court can await a further hearing, if it is determined at some later date that the award of lost opportunity costs is appropriate.

## ORDERS

The automatic stay of 11 U.S.C. § 362 shall remain in effect conditioned upon payment by the Debtor of the following adequate protection payments:

1. Debtor shall keep all real estate taxes current and shall pay all taxes before they become delinquent.

2. The Debtor shall maintain the same level of insurance on the property as prior to the filing of the Chapter 11 Petition. The Debtor shall furnish to Land Bank a copy of a certificate of insurance evidencing the purchase of and payment for the applicable insurance.

3. The Debtor shall pay to Land Bank the sum of $28,334.00 on or before December 15, 1986. Land Bank shall be given a lien in the 1986 crop grown on the property which secures the Land Bank debt, as security for this adequate protection payment.