**In re BLACKFORD FARMS, INC., Debtor.**

**Bankruptcy No. 85–00839C.**

United States Bankruptcy Court, N.D. Iowa.

Dec. 18, 1986.

John M. Titler, Cedar Rapids, Iowa, for Land Bank.

Rush M. Shortley, Cedar Rapids, Iowa, for debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER re: Section 507(b) Superpriority Claim

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court is the application of Federal Land Bank of Omaha (Land Bank) for allowance of administrative claims pursuant to 11 U.S.C. Section 507(b). This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(B).

Having considered all pleadings and briefs, the Court makes the following Findings, Conclusions, and Order pursuant to F.R.B.P. 7052.

### FINDINGS OF FACT

The Debtor filed its Chapter 11 Petition on April 19, 1985. Land Bank holds a first mortgage lien against approximately 2,649 acres of farmland owned and operated by the Debtor. Land Bank filed its first motion for relief from the automatic stay, imposed pursuant to 11 U.S.C. Section 362(a) on June 14, 1985. It was stipulated by the parties that the value of the real estate, as of the date of filing, as well as the date of the first motion for relief from stay (June 14, 1985) was $4,750,000.00. Land Bank's first motion for relief from stay was denied by the Court on July 9, 1985.

A second motion for relief from stay was filed October 9, 1985. That motion was resolved pursuant to a stipulation between the parties and approved by the Court on November 7, 1985. Pursuant to that stipulation, the Debtor paid $300,000.00 to the Land Bank as adequate protection. A subsequent motion to lift stay has been filed by Land Bank. By agreement of the parties, that motion has been continued to be heard together with the confirmation hearing scheduled in connection with Debtor's proposed Plan of Reorganization. That

confirmation hearing is scheduled to be held in approximately 30 days.

The parties have also stipulated the present value of the real estate which secures the Land Bank debt is $3,500,000.00. The issue before the Court is the treatment of the decline in value from the $4,750,000.00 value at the date of filing to the present value of $3,500,000.00.

## DISCUSSION AND CONCLUSIONS OF LAW

The value of the Debtor's real estate mortgaged to Land Bank has declined $1,250,000.00 since the bankruptcy petition was filed. Land Bank received $300,000.00 from the Debtor as a payment of adequate protection, but now seeks to recover the remaining $950,000.00 as a superpriority claim pursuant to Section 507(b).

This section provides:

If the trustee, under Section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under Section 362 of this title, from the use, sale, or lease of such property under Section 363 of this title, or from the granting of a lien under Section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

■ More clearly put, Section 507(b) simply provides that where adequate protection has been extended to a secured creditor and later proves to be inadequate, the creditor then becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient. *In re Mutschler*, 45 B.R. 494, 496 (Bkrtcy D.N.D.1984). Such a superpriority claim is given a priority over every other allowable administrative claim. 3 *Collier on Bankruptcy* Paragraph 507.-05, at 507–47 (15th Ed.1986).

Considering the language of Section 507(b) and the numerous cases applying it to award superpriority treatment to secured creditors, it would be easy for the Court to decide this case in favor of Land Bank. However, since Section 507(b) treatment is linked to the concept of adequate protection, the Debtor correctly raises the complicating issue of the effect on Section 507(b) of *In re Ahlers*, 794 F.2d 388 (8th Cir.1986).

■ One of the essential holdings of *Ahlers* is that in providing adequate protection, the Bankruptcy Court must look to underlying state law as well as the practical realities of foreclosure and resale of real estate. *Ahlers* also provides a formula for calculating the appropriate starting date for adequate protection payments. In essence, *Ahlers* is a "but for" analysis of what would have happened had bankruptcy not intervened. *In re Offerman Farms, Inc.*, 67 B.R. 279, 282 (Bkrtcy.N.D.Iowa 1986). In the context of Section 507(b), the Debtor argues that *Ahlers* requires the Court to determine the date, under Iowa law, that the Land Bank could actually liquidate its collateral and receive its value, i.e., to calculate the appropriate starting date for adequate protection, before the Court can conclude that Land Bank has suffered an insufficiency of adequate protection which is subject to Section 507(b) treatment.

To reach such a conclusion, as Debtor urges, requires taking *Ahlers* a step beyond its narrow holding. Although *Ahlers* gives direction in determining when a secured creditor is entitled to lost opportunity costs, 794 F.2d at 305, it is not entirely clear that the delay in foreclosure and reinvestment analysis is also to apply to the determination of adequate protection which compensates for decline in collateral value. The phrase "adequate protection" is nearly always used without reference to the context that lost opportunity costs are the subject of the litigation. Thus, if read broadly, Judge Heaney's opinion can support such an approach where decline in collateral value is at issue. But in addition,

footnote 13 provides insight into how broadly the court in *Ahlers* views the application of the foreclosure and reinvestment analysis:

[T]he banks will be protected *from falling values* from the date that they could obtain possession of the property until the plan is confirmed ... and this period should ordinarily be more than sufficient to obtain confirmation or rejection of a plan. As for the loss that occurs *during the redemption period*, banks unfortunately will have to absorb this loss with or without a bankruptcy proceeding. Indeed, if a feasible plan is submitted and approved, the banks may realize more under reorganization than they could under liquidation. *This opinion simply recognizes reality.*

*Ahlers,* 794 F.2d at 398, Fn. 13 (emphasis added).

At least one Bankruptcy Court in this Circuit finds the language of footnote 13 convincing. *In re Asbridge,* 66 B.R. 894, (Bkrtcy.D.N.D.1986) holds that a secured creditor seeking relief from stay is not entitled to adequate protection for decline in value of real estate at least until the creditor would likely have been able to sell the property, a time which the Court determines is no earlier than the end of the 12 month redemption period following foreclosure. In applying the "but for" analysis of *Ahlers,* Judge Hill reasons that the creditor would still have suffered losses from decline in value and delay for foreclosure and reinvestment outside of bankruptcy. *Asbridge, 66 B.R. at 902.*

Further support for adopting Debtor's approach to adequate protection in the Section 507(b) context is found in *In re Callister,* 15 B.R. 521 (Bkrtcy.D.Utah 1981). In *Callister,* the Court expressly considers whether the loss in collateral value, previously the subject of an adequate protection stipulation, is attributable to the automatic stay, or would have occurred regardless of Bankruptcy. *Id.* at 530–31. Judge Mabey here relies on his earlier opinion in *In re Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bkrtcy.D.Utah 1981) for the proposition

that some declines in collateral value, such as those which are unavoidable with or without the automatic stay, may not be compensable via adequate protection. *Callister,* 15 B.R. at 530. In *Callister,* Judge Mabey adopts a balancing approach, and considers the equities of the case, the manner in which adequate protection was provided, and the reasons why adequate protection failed. In deciding whether the creditor should receive Section 507(b) treatment for loss in collateral value due to market forces, Judge Mabey examines the foreseeability of these market forces at the time of the adequate protection stipulation. *Id.* at 553.

Such an approach to Section 507(b) leaves room for debtor and creditor to demonstrate whether loss in value would have occurred regardless of bankruptcy. It is consistent with Judge Hill's reading of *Ahlers* in *Asbridge,* and the Court finds it persuasive. Thus, the Court concludes that an *Ahlers* analysis of Land Bank's right to adequate protection is relevant to a determination of Land Bank's Section 507(b) claim. Accordingly, before any loss in the value of the Debtor's farmland can be measured, the Court must calculate (1) the starting date, or the date of Land Bank's motion for relief from stay, and add thereto (2) the usual delays of foreclosure, sale, and reinvestment under Iowa law. *Ahlers,* 794 F.2d at 395.

The Court concludes that the starting date for purposes of this analysis is June 14, 1985. Though this is not the stay motion which resulted in the parties' adequate protection stipulation, it is the date when Land Bank first acted to exercise its right to possession of the collateral or adequate protection, and thus is the proper date under *Ahlers. Id.* at 395, fn. 6.

On the calculation of foreclosure, sale, and reinvestment delays, the debtor argues that despite important differences regarding the rights of possession during redemption between the Minnesota law applicable in *Ahlers,* and the Iowa law applicable here, the practical result is the same: the mortgagee will be the purchaser at the

sheriff's sale, will be unable to sell it during the redemption period, and thus will gain no benefit from sale and reinvestment for at least 15 months from its petition of foreclosure. Debtor's Brief at 14. Consequently, Debtor would conclude that no Section 507(b) determination can now be made. However, the Court is not willing to adopt the Debtor's assumption that Land Bank will be unable to sell the real estate during redemption. This Court considers this issue to be one in need of factual development in circumstances in which it is clearly presented and actually litigated. Consequently, before reaching a final determination of Land Bank's right to adequate protection under *Ahlers,* the Court will schedule a hearing in this case, allowing the parties to offer evidence on the issue of the usual delays of foreclosure, sale, and reinvestment under Iowa law.

One final conceptual problem warrants brief attention. In adopting, for purposes of Section 507(b) superpriority treatment, the *Ahlers* calculation for purposes of adequate protection of the value of real estate, the Court acknowledges the existence of the troublesome "double stay". This is the potential effect on a creditor that could arise if, after waiting for adequate protection payments through the estimated foreclosure, sale, and reinvestment period, the stay is lifted without a plan being confirmed. *Ahlers* assumes a plan will be confirmed and the creditor will receive the same under the plan as the creditor would receive through foreclosure. However, in many instances, confirmation is denied and the stay is lifted pursuant to Section 362(d), or the case is eventually dismissed and the stay lifts pursuant to Section 362(c). In those circumstances, the creditor faces the further delays of the actual foreclosure, sheriff's sale and redemption period; hence the so-called double stay.

This Court will take up the issue of what protection, if any, Land Bank is entitled to, on account of the "double stay", at the hearing on foreclosure delays.

*ORDER*

Final determination of Land Bank's right to Section 507(b) superpriority treatment will await further hearing on the issue of the usual delays of foreclosure, sale, and reinvestment of real estate under Iowa law and the protection to be afforded on account of the "double stay."

SO ORDERED.