**In re FIVE STAR PARTNERS, L.P., Debtor.**

**VINCENT PROPERTIES, INC., Movant,**

v.

**FIVE STAR PARTNERS, L.P., Respondent.**

**Bankruptcy No. 93–72524.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 26, 1996.

Richard D. Ellenberg, Ellenberg & Associates, P.C., Atlanta, Georgia, for movant.

Dennis S. Meir and Todd C. Meyers of Kilpatrick & Cody, Atlanta, Georgia, for debtor/respondent.

*ORDER DENYING MOTION OF VINCENT PROPERTIES, INC., FOR PAYMENT OF SECTION 507(b) CLAIM*

JAMES E. MASSEY, Bankruptcy Judge.

Vincent Properties, Inc., a secured creditor, moves for an order directing payment of an alleged superpriority administrative claim under section 507(b) of the Bankruptcy Code. Under that section, if adequate protection provided by the trustee for a creditor's interest in property fails, an allowed administrative expense claim of that creditor arising from the imposition of the automatic stay or other use of its collateral has priority over all other administrative expenses.

Vincent Properties' predecessor in interest, Vincent Netherlands Properties, B.V., ("VNP"), made two motions for relief from the automatic stay imposed by section 362, both of which this court denied. Although the Debtor later gave up its interest in the real property securing VNP's (and now Vincent Properties') claim, the Debtor did not pay ad valorem taxes on the property in the interim. Vincent Properties contends that all the while the value of its collateral either remained the same or declined. It reasons that the court would not have denied the stay relief motions unless the Debtor was providing adequate protection and that because the unpaid tax liens reduced the property's static value, adequate protection failed, thereby giving rise to a section 507(b) superpriority claim in the amount of the unpaid taxes.

Vincent Properties' motion is without merit. First, the Debtor did not "provide" adequate protection to VNP within the meaning of section 507(b). Second, VNP had no administrative expense claim because the Debtor never physically used or derived a benefit from holding the property. Third, even if the estate derived a benefit from the property, Vincent Properties has not shown that it or VNP suffered any damage, let alone damage flowing from the automatic stay.

## FACTS

On December 14, 1990, Five Star Properties, Inc. ("FSPI") purchased from O.P.D.I., U.S., Inc. ("OPDI") three parcels of real

property in midtown Atlanta, including the Biltmore Hotel, which had been unoccupied for about ten years, an adjacent lot and a nearby corner lot. FSPI paid the purchase price of $16,500,000 with cash of $3,000,000 and a note for $13,500,000 secured by the three parcels. Thereafter, FSPI transferred the property to Five Star Partners, L.P., the Debtor in this Chapter 11 case, and OPDI transferred the note and security deed to Vincent Antilles Holdings, N.V., which in turn transferred them to VNP.

On September 3, 1993, Five Star Partners, L.P., filed a petition under Chapter 11 of the Bankruptcy Code. Less than a week later, on September 8, 1993, VNP moved for relief from the automatic stay imposed by section 362 of the Bankruptcy Code on the grounds that there was no equity in the property, the property was not necessary to an effective reorganization and that there was a lack of adequate protection. VNP also alleged that the Debtor had not yet paid 1993 ad valorem taxes on the property.

In its response, the Debtor contended that the security interest of VNP was invalid, that the property was essential to the Debtor's reorganization effort and that because the ad valorem taxes arose prepetition, it had no authority to pay them without the court's permission. It also asserted that VNP had "made no showing or even an allegation that its interest in the Biltmore is threatened by a further increase in the debt secured by tax liens...." (Debtor's Response To Motion For Relief From Stay, 10). The court later resolved the dispute concerning the validity of the security deed in VNP's favor. *Five Star Partners, L.P. v. Vincent Netherlands Properties, B.V. (In re Five Star Partners, L.P.)*, 169 B.R. 994 (Bankr.N.D.Ga.1994).

At a hearing on the motion on September 28, 1993, counsel for VNP explained the alleged lack of adequate protection. VNP was actively pursuing an opportunity to sell the property to Frank Howington, a local developer, so that if the stay were not lifted, it might lose the deal with Mr. Howington. According to counsel, Mr. Howington was willing to pay $14,400,000 for the property, an amount that would exceed the total debt owed to VNP by approximately $300,000.

Counsel argued that because taxes and interest continued to accrue, the $300,000 equity cushion would disappear in a relatively short time, leaving VNP with a shortfall on its claim. VNP offered no evidence to support its contentions.

In a written response and at the hearing, the Debtor contended that the Biltmore Hotel property was the anchor parcel of a large group of contiguous properties and hence was essential to its reorganization strategy of selling its entire portfolio of properties to one buyer. It too presented no evidence at the hearing on VNP's motion.

In an order dated October 4, 1993, the court denied VNP's motion and allowed the Debtor to proceed with its attempts to market VNP's collateral as part of the larger tract. VNP did not appeal that order.

Instead, following the denial of its motion, VNP continued unilaterally to negotiate with Mr. Howington concerning a sale, even though the Debtor held the equitable title to the property and was itself attempting to find a buyer. On February 24, 1994, VNP filed a second motion for relief from the automatic stay virtually identical to its initial motion. It again asserted that there was no equity in the property, that the property was not necessary for an effective reorganization, that it lacked adequate protection and that the Debtor had failed to pay 1993 property taxes.

At a hearing held on April 12, 1994, VNP presented evidence that it was continuing to negotiate an agreement for the sale of the property to Mr. Howington for over $14,000,000. The Debtor responded by presenting uncontroverted evidence that there was a substantial possibility of realizing far more on a sale of the entire tract than would be realized if parcels were sold separately and that the Biltmore Hotel parcel was an essential part of the Debtor's marketing strategy.

On June 10, 1994, the court entered an order again refusing to lift the stay. The court held that the Debtor had shown that its ability to offer the Biltmore Hotel as a part of the larger tract was necessary to an effective reorganization. On the other hand, VNP had not proved that there was an immediate

prospect for closing a deal with Mr. Howington. Those parties had negotiated for over a year, but they had only recently signed a letter of intent. Their nonbinding agreement left unresolved several key issues, including the terms of a management and leasing agreement and the terms of the partnership agreement between Mr. Howington and VNP. These issues had to be resolved before Mr. Howington could begin to raise the funds needed to close the deal. VNP did not appeal that order.

On June 30, 1994, VNP moved for relief from the stay for a third time, alleging that it had brought its efforts to arrange a sale to Mr. Howington to a successful completion and that the chances for the success of the Debtor's plan had deteriorated. The court was not called upon to rule on the third motion, however, because shortly thereafter VNP and the Debtor reached a partial resolution of their dispute.

On August 4, 1994, the Debtor moved for approval of a compromise and settlement with VNP. Under the terms of the settlement agreement, the Debtor was given six months to sell the Biltmore Hotel and the adjacent lot to Mr. Howington or to another developer with the proceeds to go to VNP or, alternatively, to release its interest directly to VNP. VNP agreed to release its interest in the corner lot if the Debtor sold or released the Biltmore. If the Debtor did nothing in the six month period, the agreement would have no further effect. VNP specifically reserved the right to assert a claim against the Debtor for lack of adequate protection based on property taxes accruing against the property.

The court approved the settlement on August 24, 1994, and VNP thereafter withdrew its third motion for relief from the stay. The parties do not dispute that prior to February 22, 1995, the date after which the settlement was to have become void, the Debtor agreed to transfer the Biltmore Hotel and the adjacent lot directly to VNP and VNP agreed to release its security interest in the corner parcel. (Vincent Properties' Memorandum of Law In Support of Motion For Payment of Claim, 8–9). Neither party has indicated the date on which the transfers proposed in the

settlement agreement actually occurred. According to the Debtor, the parties agreed that documentation of the transfers and the release of VNP's security interest in the corner parcel could occur after the February 22, 1995 deadline. (Debtor's Second Amended Disclosure Statement, 29–31). Based on these statements, it is apparent that the Debtor abandoned its interest in the Biltmore Hotel and the adjacent lot to VNP.

The Debtor's second amended plan of reorganization provided that claims for taxes against property not retained by the Debtor at the effective date of the plan would be satisfied solely by the claimant's retention of a lien against the property and that the Debtor would have no further liability with respect to taxes against those properties. The plan also recognized that VNP had reserved the right to assert a claim for lack of adequate protection in the amount of any unpaid taxes secured by the Biltmore Hotel property. (Debtor's Second Amended Plan of Reorganization, 5, 23–24.) On April 17, 1995, the court entered an order confirming the second amended plan.

Sometime following the approval of the settlement agreement between VNP and the Debtor in August 1994, VNP assigned the deed to secure debt on the Biltmore Hotel to Vincent Properties. (Motion of Vincent Properties, Inc. For Payment of Claim, ¶ 1). On July 13, 1995, Vincent Properties filed a motion pursuant to 11 U.S.C. § 507(b) for payment of a superpriority administrative claim in an amount equal to the unpaid ad valorem taxes for 1993, 1994 and 1995. On October 19, 1995, the court held a hearing on the motion at which neither party presented evidence. In their briefs the parties refer to VNP and Vincent Properties as "Vincent," making no distinction between them. In the balance of this order, the court will do the same.

### DISCUSSION

In bankruptcy, a trustee (or debtor in possession in a Chapter 11 case) may use property of the estate, other than cash collateral, in the ordinary course of the debtor's business without asking the permission of a creditor holding a claim secured by that proper-

ty. Whether or not its collateral is being used by the trustee, a creditor threatened by a possible loss of value of property securing its claim can seek a lifting or modification of the automatic stay, which section 362 of the Bankruptcy Code imposes when a bankruptcy case is filed, so as to reclaim its collateral and presumably avoid the loss that it otherwise believes will occur. When a court denies a motion for relief from stay, it frequently finds that the creditor's interest in property is already adequately protected. In other words, the judge decides that it is more likely than not that the creditor will ultimately be able to realize the same value for its interest in the collateral as it would if the stay were immediately lifted. In addition to weighing evidence concerning such factors as property value and the amount and terms of the claim, the court will also evaluate the dimensions and imminence of the threat to value described by the creditor. If the protection afforded to or enjoyed by the creditor is in fact adequate, that is the end of the matter. But suppose the judge is wrong. Suppose the creditor suffers a loss that might have been avoided if the stay had not blocked foreclosure. What then?

Under limited and specifically defined circumstances, much more limited than Vincent would desire, as we shall see, the Bankruptcy Code provides a mechanism for recompensing a creditor that suffers a loss because the adequate protection provided by a trustee or debtor in possession fails to preserve the value of the interest in property. That mechanism is section 507(b).

This contested matter raises several issues concerning the interpretation of section 507(b) and related sections of the Bankruptcy Code. Section 507(b) provides:

> If the trustee, under section 362, 363 or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use sale or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

Section 362 makes reference to adequate protection only in subsection (d)(1), which provides in part that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... (1) for cause, including the lack of adequate protection of an interest in property...." Sections 363(e) and 364(d), which also refer to adequate protection, are not applicable to this case but should be considered in construing section 507(b).[1]

The term "adequate protection" is not defined in the Bankruptcy Code, but section 361 provides examples of what would constitute adequate protection under section 362, 363 or 364. Conversely, section 361(3) prohibits as a form of adequate protection, "compensation allowable under section 503(b)(1) of this title as an administrative expense." The tension between section 507(b)'s use of an administrative expense as redress for a failure of adequate protection and section 361(3)'s interdiction against using an administrative expense as a method of providing adequate protection has been a source of confusion in construing these provisions.

■ Section 507(b) erects three primary hurdles that a creditor must clear on the

---

1. Section 363(e) provides in part:
   "on request of [the] entity that has an interest in property, ... the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection...."
   Section 364(d)(1) provides as follows:
   (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
   (A) the trustee is unable to obtain such credit otherwise; and
   (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

path to superpriority. First, the trustee (or debtor in possession, 11 U.S.C. § 1107(a) must "provide" under sections 362, 363 or 364 adequate protection of the interest of the creditor secured by a lien on property of the debtor. Second, notwithstanding the protection provided, the creditor must have an allowable claim under section 507(a)(1). Third, the claim must arise from the stay of action under section 362, the use, sale or lease of property under section 363 or the granting of a lien under section 364. Vincent trips on all three hurdles.

Although Vincent initially contended that section 507(b) itself requires that adequate protection be provided, it later abandoned that position and rightly so. Beginning with the word "if" so as to indicate a conditional state, section 507(b) itself does not require a trustee to provide adequate protection for a creditor's interest in property. By its references to sections 362, 363 and 364, section 507(b) makes it clear that if a trustee is providing adequate protection, it must be pursuant to one of those other sections.

█ The first hurdle that Vincent must jump is showing that the Debtor provided adequate protection to Vincent. The orders denying its motions neither found that there was adequate protection nor required the Debtor to provide it. Vincent recognizes this fact but argues that in denying its stay relief motions, the court found no lack of adequate protection so that the Debtor provided adequate protection simply by holding the property. Thus, the first issue is whether a trustee or debtor in possession provides adequate protection to a creditor for purposes of section 507(b), as a consequence of denial of the creditor's stay relief motion alleging a lack of adequate protection. Resolution of this issue turns on the proper interpretation of the texts of sections 362(d) and 507(b).

█ The U.S. Supreme Court has laid down the basic rules of statutory construction. The initial inquiry is whether the text is ambiguous or unclear. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("First, this Court has repeated with some frequency: 'Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.' *Blum v. Stenson,* [465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) ]"). The court must consider the entire scheme of the statute as well as the text of a particular provision to determine its meaning. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.")

The texts of sections 362(d) and 507(b) are complicated but not unclear on the issue presented by Vincent's argument. Section 362(d) contains no express requirement that a trustee provide adequate protection. If a court finds a lack of adequate protection, it finds cause for relief from the automatic stay and must grant the creditor's motion, but it is illogical to conclude that the converse is always true. Nothing in section 362(d) implies that if the court does not lift the stay, the trustee is therefore providing adequate protection. Rather, it requires only that the bankruptcy court test for the presence or absence of adequate protection in deciding whether or not to grant relief to a movant. The same analysis holds true for sections 363(e) and 364(d).

Vincent really bases its argument, not on statutory construction, but on a view of adequate protection as a sort of ubiquitous right of secured creditors. In doing so it relies heavily on the very sparse legislative history of section 507(b). The House version of the Bankruptcy Reform Act initially provided in section 361(3) that adequate protection could be provided by granting an administrative expense to the creditor. H.R. 8200, 95th Cong., 1st Sess., § 361(3) (1977). The Senate Bill, S. 2266, 95th Cong., 2nd Sess. (1978), contained no comparable provision. Neither bill contained the present section 507(b). In the final compromise that became the Bankruptcy Code, section 361(3) in its present form and section 507(b) were added. Vincent relies on these remarks by Congressman Don Edwards explaining the compromise:

To the extent the protection proves to be inadequate after the fact, the creditor is entitled to a first priority administrative expense under section 507(b).

124 Cong. Rec. 32,395 (1978) (Statement of Rep. Edwards). A few pages later are these remarks concerning section 507(b):

Section 507(b) of the House amendment is new and is derived from the compromise contained in the House amendment with respect to adequate protection under section 361. Subsection (b) provides that to the extent adequate protection of the interest of a holder of a claim proves to be inadequate, then the creditor's claim is given priority over every other allowable claim entitled to distribution under section 507(a).

124 Cong. Rec. 32,398 (1978).

By paraphrasing only a portion of the statute and omitting salient limitations, this legislative history conflicts with, rather than explains, section 507(b). It is, therefore, an unreliable source for deriving meaning.

Section 507(b) echoes the proper construction of section 362(d). The words "[i]f the trustee, under section 362, 363 or 364 of this title, provides adequate protection" in section 507(b) convey clearly the sense that the trustee is affirmatively taking action by supplying value to the creditor. *Cf., In re James B. Downing & Co.*, 94 B.R. 515, 520–21 (Bankr.N.D.Ill.1988) (affirmative grant of adequate protection is prerequisite for section 507(b) claim). Moreover, the conditional nature of this phrase implies that there can be adequate protection that the trustee does not provide or supply. For example, a trustee does not provide an equity cushion as adequate protection, but the presence of equity may be a basis for finding no lack of adequate protection. *Baybank–Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203

(1st Cir.1995) ("A sufficient equity cushion is itself a recognized form of adequate protection.") Equity is a condition, the positive difference between value and debt, and is either present or absent. It cannot in any practical sense be supplied by the trustee.

If a trustee or debtor in possession were deemed to provide adequate protection for section 507(b) purposes, application of section 361(3) would lead to an absurd result. Creditors needing adequate protection cannot get it in the form of an administrative expense claim because of the prohibition in section 361(3), but, under Vincent's construction of section 507(b), creditors whose motions for stay relief are denied because of no lack of adequate protection would automatically get a contingent superpriority administrative expense claim. That makes no sense.[2]

Vincent stumbles on an even lower rung of the first hurdle than the providing of adequate protection. In arguing that the denials of its stay relief motions imply that the court must have determined that adequate protection was being provided, Vincent relies on a flawed syllogism. The major premise of Vincent's argument is that if a court denies a motion for stay relief that alleged a lack of adequate protection, it must have decided that the trustee or debtor in possession is providing adequate protection. Applying the minor premise that the court denied its stay relief motions, Vincent concludes that the Debtor must have provided it with adequate protection.

The major premise makes an unwarranted assumption about the basis on which a court may deny a stay relief motion. When a court grants a motion for relief from stay for lack of adequate protection, the trustee or debtor has not proven that adequate protection exists or can be provided; therefore, there is cause for such relief. The court may deny

---

**2.** It should be noted that the prohibition in section 361(3) against use of an administrative expense claim as a form of adequate protection applies only in the first instance. Section 361(3) does not bar a court from granting an administrative expense claim after a failure of adequate protection already provided by the trustee. *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.)*, 4 F.3d 940 (11th Cir.1993), *denying rehearing with amended opin.*, 991 F.2d

682 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388, 127 L.Ed.2d 388 (1994) ("Despite this ex ante prohibition [in section 361(3)] on the use of an administrative expense claim, it is specifically allowed as a remedy for the later failure of the adequate protection granted.") If section 361(3) blocked such use of administrative expense claims entirely, section 507(b) itself would be meaningless.

such a motion on condition that adequate protection be provided, thereby eliminating what otherwise would be cause for stay relief. If the court denies the motion without conditioning the denial on the providing of adequate protection, the court may have been mistaken in its analysis in some respect. Or, the court may have accurately found that the creditor is already adequately protected. Or, the court may have correctly determined that the creditor failed to make out a prima facie case that a specific cause for lifting the stay exists. Here, not once but twice, Vincent failed to make out a prima facie case of a lack of adequate protection. For purposes of section 507(b), it does not matter now whether the court was right or wrong in its decision, but more about correcting errors later.

■■■ A motion for relief from stay, like any other contested matter or adversary proceeding, raises only the issues that the parties put in play, although a court might, in its discretion, go past the motion to address other issues. The trustee has the burden of proof on all issues other than equity in property, 11 U.S.C. § 362(g), but the creditor has the initial burden of going forward to show the grounds that compel the lifting of the stay. *In re Elmira Litho, Inc.,* 174 B.R. 892, 900 (Bankr.S.D.N.Y.1994); *In re Planned Systems, Inc.,* 78 B.R. 852, 859–60 (Bankr. S.D.Ohio 1987). Hence, where a creditor asserts a lack of adequate protection, the trustee or debtor in possession is required to respond only to those issues on which the creditor makes out a prima facie case. Section 362 imposes no obligation to prove that there is adequate protection, only that the grounds raised by the creditor do not constitute a lack of it.

Vincent contended in its motions for relief from the stay in the broadest possible language that adequate protection was lacking. At the hearings, however, it narrowed the set of all possible explanations for lack of adequate protection to one: it was inadequately protected because it had negotiated a deal with Mr. Howington for the sale of the Biltmore Hotel for $14,400,000, so that delay in foreclosing would result in deterioration of its position due to the accrual of taxes and interest or to possible termination of the deal. The Debtor disputed these factual contentions.

At the first hearing, Vincent introduced no evidence to support its position. Therefore, the court had no choice but to deny the motion because Vincent had shown no cause for relief from the stay sufficient to shift the burden of proving anything to the Debtor.

At the hearing on the second motion, Vincent presented evidence but did not prove its case. The court found that Vincent and Mr. Howington had not reached agreement and hence that Vincent had failed to prove that the salvation it sought in Mr. Howington was threatened by a refusal to lift the stay.

Thus, the court determined no more than that Vincent was not deprived of adequate protection by being enjoined from foreclosing so as to sell the property to Mr. Howington, since Vincent had not proved it had a deal with him. The denials of Vincent's motions in no way implied that the court found Vincent was adequately protected, nor did the orders impose by implication an obligation on the Debtor to provide Vincent with adequate protection.

Vincent next argues that the fixing of the tax liens during the bankruptcy case was equivalent to priming its interest and thus implies that the Debtor was providing it with adequate protection under section 364(d). Leaving aside the question of whether a trustee "obtains" credit or "incurs" a debt under section 364(d) merely by standing idle while the calendar date for fixing ad valorem tax liability passes, Vincent's argument rests on the assertion that while the Debtor held title to the Biltmore Hotel, tax liens attached. Section 362(b)(18) now excepts from the stay, the creation or perfection of a statutory lien for ad valorem taxes, but it was not enacted until 1994. Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 401, 108 Stat. 4106, 4141 (1994). The 1994 amendments, with specified exceptions of which section 362(b)(18) is not one, are not retroactive. Pub.L. 103–394, § 702(b)(2), 108 Stat. at 4150. Hence, so long as the Debtor held the Biltmore Hotel, no lien for taxes attached to the property to secure the taxes. *Lincoln Savings Bank, FSB v. Suffolk Co. Treasurer (In re Parr*

*Meadows Racing Assoc., Inc.)*, 880 F.2d 1540, 1544–45 (2nd Cir.1989), *cert. denied sub nom., Suffolk Co. Treasurer v. Barr*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *Accord, Makoroff v. City of Lockport, N.Y.*, 916 F.2d 890, 895–96 (3rd Cir.1990), *cert. denied sub nom., City of Lockport, N.Y. v. U.S.*, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991) (city permitted to perfect tax lien post-petition only where it had performed all other acts necessary to attachment of lien before filing of petition). It follows that section 364 is not a springboard for asserting that the Debtor provided adequate protection to Vincent.

Though Vincent may not use section 364 offensively as a basis for asserting one element of a section 507(b) claim, section 364 provides a defense for the Debtor against a section 507(b) claim. If a trustee provides adequate protection to a creditor as a condition for holding or using its property, the estate presumably incurs a contingent debt to the creditor under section 507(b) for an administrative expense. To incur a debt under section 507(b) is to incur a debt of the type described in sections 364(b) and 364(c).[3] Under those sections, a trustee must have court authorization, obtained after notice and a hearing, to incur debt having the characteristics described there. Vincent obtained no court authorization and gave no notice to the Debtor or anyone else that in moving for stay relief, it intended to cause the Debtor to incur a superpriority administrative expense if the taxes were not paid and the property's value did not rise.

Aside from finding no support in the plain meaning of the relevant sections of the Bankruptcy Code, Vincent's construction of section 507(b) would undermine sound estate administration by encouraging creditors to substitute that section as a method of correcting a bankruptcy judge's error in denying a section 362(d) motion. In that circumstance, a secured creditor would have little incentive to appeal even patently erroneous orders or to renew motions for stay relief, so long as it thinks the estate can ultimately pay the missing protection. An appeal or persistence in renewing motions would have the beneficial effect of keeping the court and the parties focused on the risk of the enterprise in which the trustee proposes to use the property. And, the cost of error correction, to the creditor and to the estate, would be less than the cost of pressing, not to mention granting, a section 507(b) claim.

■ Moreover, Vincent's interpretation of section 507(b) conflicts with the policy of encouraging suppliers to extend post-petition credit by giving their claims first priority status. "The rationale for administrative expense priority derives from the realities of getting suppliers (and others) to deal with an insolvent enterprise." Jackson, *The Logic and Limits of Bankruptcy Law*, 153. Under Vincent's theory, the estate would always guarantee on a superpriority basis the value of a secured creditor's interest against decline due to the stay following the denial of a stay relief motion. To evaluate the on-going risk of being subordinated following the denial of a stay relief motion, post-petition suppliers would constantly have to monitor a debtor's use of assets and the changing values of those assets, even though the court may not have directed the trustee to provide adequate protection for a secured creditor's interest in those assets. In the face of the resulting uncertainty, suppliers may be discouraged from providing goods and services on credit to the debtor or may raise the cost of credit to the detriment of the reorganization effort.

The court concludes that a trustee or debtor in possession does not provide adequate protection for section 507(b) purposes unless it supplies some additional consideration to which the creditor is not already entitled. Mere denial of a stay relief motion does not cause the trustee or debtor in possession to provide the movant with adequate protection. The court notes that an agreement to provide

---

**3.** Section 364(b) provides that the court, "after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt" outside the ordinary course of business, allowable as an administrative expense. Section 364(c)(1) provides that if the trustee cannot obtain unsecured debt allowable as an administrative expense, the court, "after notice and a hearing, may authorize the obtaining of credit or the incurring of a debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title".

some consideration to a creditor as a condition for using property may give rise to a section 507(b) claim. *See, e.g., Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.),* 991 F.2d 682 (11th Cir. 1993), *amending opinion on denial of rehearing,* 4 F.3d 940 (11th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994). There being no such agreement here, the court need not comment on or address possible limitations on the application of section 507(b) to such agreements.

Because the Debtor was not required to provide, and did not provide, adequate protection to Vincent within the meaning of section 507(b), Vincent has no claim under that section.

■ The second hurdle that Vincent must clear is that it holds a claim under section 507(a)(1). That section gives first priority to "administrative expenses allowed under section 503(b) of this title." Hence, to have a superpriority claim under section 507(b), Vincent must first show that under section 503(b) it holds an allowed administrative expense. Section 503(b)(1)(A) provides in relevant part as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses ... including—
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate. ...

None of the other subsections of section 503(b) are relevant to the inquiry, but the word "including" is "not limiting," 11 U.S.C. § 102(3), so that the listing of kinds of administrative expenses in section 503(b) does not define the universe of such expenses. The only basis on which Vincent could contend that the Debtor incurred an administrative expense to it, other than in connection with preserving the estate, is the breach of an agreement or order requiring that adequate protection be provided. As shown already, there is no such agreement or order. Hence, the issue boils down to whether the disposition of the collateral securing Vincent's claim following the denial of its motions for stay relief gave rise to an "actual, necessary" cost or expense of "preserving the estate." This too is a deadend for Vincent.

The Debtor correctly asserts that Vincent has failed to satisfy section 503(b)(1)(A) because the collateral left in the hands of the Debtor never yielded any actual benefit to the estate. Indeed, the Debtor never made any physical use of the property. Instead, it merely held title to the property in an effort to enhance the value of the larger tract of land of which the Biltmore Hotel was a part.

■ "In order to qualify a claim for payment as an administrative expense a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or alternatively that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate." *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking Service, Inc.),* 851 F.2d 159, 161–62 (6th Cir. 1988).

> The priority of an administrative expense is the highest. 11 U.S.C. § 507(a)(1). The allowance of such a priority is to be carefully considered, only after notice and hearing. 11 U.S.C. § 503. That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely saleable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

*Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530, 1532 (11th Cir.1986). "[T]he mere opportunity to market collateral is [not] the type of concrete, actual benefit contemplated by § 503(b)(1)(A)." *Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 866–67 (4th Cir.1994). *Cf., Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.),* 991 F.2d 682, 686 (11th Cir.1993), *opinion amended on denial of rehearing,* 4 F.3d 940 (11th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994).

Vincent contends that, under *Carpet Center*, it need not show that it provided a measurable benefit to the estate in order to claim an administrative expense. Rather, it argues that its expense claim springs simply from damage to its collateral and a failure of adequate protection. Contrary to Vincent's understanding of *Carpet Center*, the court of appeals did not reject the trustee's contention that there had to be an "actual, concrete benefit to the estate" based on a post-petition transaction. Rather, the court found that the record showed that such an agreement had been made and had produced such benefits:

> [T]his case does involve a post-petition transaction beneficial to Debtor's estate rather than a mere continued use of the trucks by Debtor....
>
> Debtor's efforts to retain the tractors demonstrate that the collateral was beneficial to the estate.

*Carpet Center*, 991 F.2d at 686–87.

Here, by contrast, there was no post-petition agreement or order requiring the Debtor to furnish Vincent with adequate protection. Moreover, the estate made no actual use of the hotel property, and the anticipated benefit proved to be ephemeral, even though the Debtor believed its holding of that property would confer a benefit on the estate. Hence, *Carpet Center* does not support Vincent's argument that it holds an administrative expense claim.

Vincent contends that it holds such a claim because the taxes are an administrative expense. That argument is a non sequitur. Assuming that the taxing authorities held an administrative expense claim against the estate for post-petition ad valorem taxes, it does not follow that Vincent holds such a claim. Vincent must show that it holds an administrative expense that arose from its inability to foreclose due to the automatic stay. It does not establish such a claim by pointing out that it may end up paying what might have been an administrative expense, particularly where the confirmed plan provides that such an administrative expense will in fact not be paid by the Debtor. Vincent did not prove that it holds an allowable administrative expense under section 503(b); for that reason its motion for payment of a section 507(b) claim must fail.

The third and final hurdle Vincent must jump is proving that the automatic stay caused it damage. Here too, Vincent falters.

Vincent has so far failed to prove that it suffered any damage because it did not prove the value of the property remained unchanged. Vincent asserted that there was no dispute about that fact. If so, it would follow that the tax liens decreased the value of its interest in the property. In fact, however, the Debtor disputed the assertion that the property's value remained unchanged or decreased during the case. In its response to Vincent's second motion for stay relief, the Debtor describes Vincent's arguments as the "*purported* decline in the value of its security interest" and "the decline in value of its security interest, *if any*." (Emphasis added.) Nowhere in the record is there any oral or written concession concerning the exact value of Vincent's collateral at any given point in time. Hence, Vincent failed to prove that the value of its collateral remained the same or decreased during the pendency of the case and has not shown that it suffered any loss arising from the stay.

Nonetheless, Vincent's counsel at the hearing on the motion conveyed his earnest belief that he thought there was no factual dispute about value. The Debtor did not argue the valuation issue either in its brief or to any significant degree at the hearing. Under Fed.R.Bankr.P. 3008, a party in interest may move for reconsideration of an order disallowing a claim, a provision that, though not open-ended, suggests a liberal approach to claim dispute resolution. Movants generally and claim proponents in particular should always be prepared to prove every necessary element on which the relief sought depends, but in this instance it would be less than fair to preclude Vincent from proving its position on value, should that position ever make a difference. Hence, the court will permit Vincent to move for reconsideration of the disallowance of its claim if it successfully appeals this order on all issues other than the valuation of its collateral.

It might also be observed that had Vincent cleared all the other hurdles, it would have faced still one more—overcoming the Debtor's inevitable contention that Vincent was not damaged by the imposition of the automatic stay because it would not have

disposed of the property before the tax liens arose even if the stay had been lifted. Vincent might have found it difficult to respond to this contention, since it took well over one year to negotiate a highly speculative transaction with Mr. Howington. In determining whether loss is attributable to the stay, a bankruptcy court must factor in delays which would have occurred in selling property after relief from stay is granted. *See, e.g., In re Blackford Farms, Inc.,* 68 B.R. 639, 640 (Bankr.N.D.Iowa 1986) (determination whether loss is attributable to the automatic stay pursuant to section 507(b) requires court to answer question how much loss in value of collateral would have occurred due to delays of foreclosure and sale). In short, Vincent failed to prove that the existence of the automatic stay adversely affected the value of its interest in the Biltmore Hotel property.

Based upon this analysis, it is

ORDERED and ADJUDGED that the motion of Vincent Properties, Inc., for payment of a superpriority administrative expense claim pursuant to 11 U.S.C. § 507(b) is DENIED, and that claim, proof of which it filed, is DISALLOWED.